HERMAN v. THE CHICAGO, MILWAUKEE AND ST. PAUL
RAILWAY COMPANY.

Railroads : INJURY TO PASSENGER IN JUMPING FROM MOVING TRAIN :
CONTRIBUTORY NEGLIGENCE : EVIDENCE. The testimony in this
case (see opinion) shows that plaintiff was riding on the rear
platform on defendant's caboose as he was nearing his des-
tination; that it was a dark night; that while there the conductor
took his ticket, but said nothing to him. Plaintiff testified that
some one told him that the train would not stop at the station, but
would "slow up," and that he should jump off after the caboose
had passed the platform, to which plaintiff responded, "all right;"
but plaintiff was unable to say that it was the conductor who thus
addressed him, or who it was, and the conductor and the brake-
man each testify that he told him no such thing. The train did
"slow up," and the conductor testified that it would have stopped,
had he not discovered that plaintiff had left it, and, therefore, sig-
naled for it to go ahead. Plaintiff was a railroad man, of nine
years' experience, and was accustomed to ride upon trains. He
jumped off the train and was injured. Held that the evidence
showed negligence on the part of plaintiff, but failed to show any
on the part of defendant, and that plaintiff could not recover.

*Appeal from Cedar Rapids Superior Court.*—HON.
JOHN T. STONEMAN, Judge.

FILED, JANUARY 29, 1890.

THIS is an action to recover damages for a personal
injury which the plaintiff received by jumping from a
moving railroad train on defendant's road at Fairfax
station, in Linn county. There was a trial by jury,
and a verdict and judgment for the plaintiff. Defend-
ant appeals.

*Mills & Keeler,* for appellant.

*C. W. Bingham* and *Hormel & Harrison,* for
appellee.

ROTHROCK, C. J.—On the evening of the twentieth
day of August, 1888, the plaintiff purchased a railroad
ticket of the agent of the defendant at Cedar Rapids.

for Fairfax station, distant some nine miles. He took passage on a freight train, and rode the whole distance on the rear platform of the last car in the train, it being a caboose or way-car. When passing the station at Fairfax, and while the train was running very slowly, the plaintiff, after the rear end of the caboose had passed the platform, jumped to the ground, and was injured.

In the original petition filed in the case the ground of recovery was based upon the alleged negligence of the defendant in commanding him that "if plaintiff wanted to get off at Fairfax, he must jump off the train as it goes by;" that the train would not stop at that station; that, after the train slowed up to some extent, he "jumped," as commanded by defendant. He alleged that, by reason of the movement of the train, he was thrown violently to the ground, "breaking his collar bone," and otherwise injuring him. After the evidence was introduced, he filed an amended and substituted petition, in which he alleged that the conductor and brakeman ordered him to jump from the train; and, as he was mistaken in alleging that his collar bone was broken, he omitted that averment from his substituted petition.

It was conceded all through the trial, and the court instructed the jury, that, if the conductor did not direct nor consent that plaintiff should jump from the train while in motion, then the plaintiff, in jumping from the train, was guilty of a misdemeanor, and could not recover. This instruction is conceded to be correct, because by section 2, chapter 148, Laws, Sixteenth General Assembly, it would have been a misdemeanor for plaintiff to jump from the train while it was in motion, and under such a state of facts the law would conclusively presume that the injury was the result of his own negligence. After the evidence was introduced, it became apparent that the right of the plaintiff to demand further attention from the court and the jury to his case depended upon whether he jumped from the

train of his own motion, or whether the conductor was so connected with the transaction that in any event, or under any circumstances, the defendant company would be liable for the injury. Like nearly every case presented to a court or jury, there came a turning point in the progress of the trial, where the rights of the parties depended upon a single question. It is understood to be the duty of counsel to present to this court every adverse ruling of the trial judge. This course is pursued out of abundant caution, and a large part of the labor of appellate courts consists of searching the record for the vital questions upon which the rights of the parties depend. It will be understood from these observations why we do not, in determining causes, discuss every proposition submitted to us by counsel. We do not desire to be understood as criticising counsel in this case for presenting questions without merit. The appeal is well presented, in every respect, by counsel for the respective parties.

It is claimed by counsel for appellant that the conductor not only did not order nor direct the plaintiff to jump from the train, but that he (the plaintiff) did so without the knowledge of the conductor. Counsel for appellee insists that this proposition is not true, or that there was sufficient evidence that the conductor ordered or consented to the act of jumping from the train to authorize the jury to make that finding. The evidence on this question does not appear to us to be doubtful. There is no controversy as to the facts testified to by the witnesses. The cause was submitted to us upon the abstract of appellant, without amendment by appellee.

The plaintiff was examined as a witness in his own behalf. He testified that soon after the train started from the station at Cedar Rapids the conductor came upon the rear platform, and took up his ticket; that he did not see any persons on the car, but two persons, the conductor and brakeman; that he looked all over the car, from his position on the platform, and that no one but the two men were in the car. The examination of the

plaintiff, as a witness, proceeded as follows: *Question.* Did any one tell you to jump off? *Answer.* Yes; a man told me to. *Q.* Who was it? *A.* I don't know. He said, 'You go soon; I go a little slow.' A man with cap on. *Q.* One of the two men you saw in the car? *A.* I saw one man open the door. *Q.* Was it the man who took your ticket? *A.* I did not see him very much. *Q.* Did he come out on the platform where you were? *A.* No; he opened the door, and said, 'You go soon; I will go slow a little.' This man said he will go slow, 'You jump.' *Q.* Was this near Fairfax, that he told you to jump? *A.* Yes; a quarter of a mile before Fairfax he said to jump. *Q.* Where were you to jump? *A.* On the west side of the depot, at Fairfax. *Q.* Did the conductor tell you to jump when he took your ticket? *A.* No; he did not tell me anything. A quarter of a mile from Fairfax he said to jump. *Q.* Did he tell you where to jump, or when? *A.* He no tell me when to jump. (An interpreter was here sworn, and interpreted remaining testimony of plaintiff.) *Q.* State what the conductor said to you when you were within a quarter of a mile of Fairfax? *A.* He told me to jump off, and they would slow up. *Q.* Did the conductor at that time say anything about the train not stopping at Fairfax? *A.* I can't say whether it was the conductor or not, but the man that opened the door told me to jump, and they would slow up. *Q.* Where was it the conductor said the train would slow up? *A.* A quarter of a mile this side of Fairfax. *Q.* Did he tell you when to jump? *A.* He did not tell me. *Q.* Did he tell you where to jump? *A.* He did not. *Q.* What did he tell you? *A.* A quarter of a mile this side of Fairfax the conductor told me he would slow up at Fairfax, and I should jump off. *Q.* Did he say anything to you about the train not going to stop at Fairfax? *A.* He did not tell me anything about it. *Q.* Did he tell you anything more than what you have said he did? *A.* Nothing else."

In his cross-examination he testified as follows: "Cross-Examination. Bought my ticket at the ticket

window of Milwaukee depot, in Cedar Rapids, in the men's waiting-room. Was there from six o'clock until train started. It was behind time. Cannot tell just when it did start. Had no watch. When I got on train I got on the rear platform of the caboose. Rode there all the way to Fairfax. I had a half-gallon stoneware jug with me. It was full of alcohol. Had this jug in my right hand when I jumped. I had taken one drink that afternoon. It was 'Prohi.' Got the alcohol in Cedar Rapids. Don't drink it. Conductor took my ticket on the train. Don't know him. The conductor said nothing to me at the time he took my ticket. He took it on the rear platform, and then went into the car. He did not say a word to me then. Did talk with me near Fairfax. *Question.* Did you not say a few minutes ago that you did not know who did talk with you about getting off the train? *Answer.* I did not know who the man was that told me to get off the train; it was one of the trainmen. *Q.* How do you know it was one of the trainmen? *A.* I did not see any one but the trainmen in there. I saw only two. *Q.* Did more than one person talk with you that night on the train between Cedar Rapids and Fairfax? *A.* Only one. *Q.* State the words the man used in talking to you. *A.* He said he would slow up, and I could jump off at Fairfax, as he would not stop at Fairfax; this was a quarter of a mile east of Fairfax. *Q.* Did you make any reply to him? *A.* I said, 'All right.' That is all I said. *Q.* Did you say anything to anybody after that, and before you jumped off the train? *A.* To nobody else. *Q.* Did anybody else say anything to you after that, and before you jumped off at Fairfax? *A.* No, sir. *Q.* Was your back to this man when he opened the car door, and spoke to you? *A.* Yes; my back was towards him. I saw him as he opened the door. *Q.* Did he come out on the platform or not? *A.* No, sir; only opened the door. *Q.* Do you know who it was? *A.* I could not tell who it was. *Q.* You had not seen him before, had you? *A.* I did not see the same man before. *Q.* Did you see the same man afterward? *A.* No; I did not. *Q.* Then, so

far as you know, you never saw the man before or since?
*A.* No, sir.   *Q.* Was your reply 'All right?'   *A.* Yes;
I said, 'All right.'   This was about one-quarter of a mile
this side or east of Fairfax.   *Q.*   Did the man use these
words as you have stated in the petition,—that the
train would slow up if you wanted to get off?   *A.* Yes.
*Q.* That was the way he put it, was it?   *A.*   Yes, sir.
*Q.* Are you sure of that?   *A.* Yes, sir.   Before you get
to Fairfax a public road crosses the track leading to
town.   I did not attempt to get off there.   When the
caboose passed the depot platform I was standing on
the left-hand side of the caboose platform, and with my
face towards the depot.   I was standing on the end of
the platform from the depot.   Did not try to get off on
the depot platform.   Jumped off on the side away from
the depot.   There was no platform on that side where I
jumped.   It is correct when I say it was in the neigh-
borhood of fifty or sixty feet west of the depot where I
jumped off.   It was a pretty dark night then.   Could
see where I was going to light.   I held onto the rail of
the caboose with my left hand when I jumped, and held
the jug in my right hand.   The train slowed up at the
depot.   It did not slow up any before it got to the
depot, but did slow up at the depot.   There is a pretty
steep up grade there, going west.   Don't know whether
it is one or two miles in length,   There is quite a curve
east of the depot.   It is straight track just west of the
depot.   Right from the depot there is a curve, and then
it runs straight west of the depot.   After the caboose
passed the depot it did not slow up any before I jumped
off.   After I jumped, did not watch the train any further,
and did not see it any longer.   They go in the curve.   I
could not see them anyhow, and don't know whether
they stopped or not.   Don't know whether the brake-
man was putting on the brakes to stop the train before
I jumped, or whether the engineer had been signaled
from the caboose to stop the train.   Did not ask any-
thing about that of anybody.   When I jumped off the
caboose nobody else was standing on the platform where
I jumped.   I could not tell how fast the train was going

when I jumped off. I did not pay any attention to that. Have been railroading nine years. Am accustomed to ride on trains. Know that an ordinary freight train does not stop its caboose at the depot. There was no person on the rear platform with me when the caboose passed the depot, or when it passed the east switch. It is true that I did not get off before I did, because I thought from the movements of the train it was going to stop. I told Joseph Cross, my section foreman, after the accident, that I thought the train stopped; remember that conversation. Accident happened on the twentieth, and I went to work in six weeks. I mean thirty-six working days. Cannot tell what month it was. I have been at work ever since, earning the same wages as before. At time I jumped did not know whether there was any danger in jumping as I did."

It will be observed that the plaintiff did not testify that it was the conductor who talked with him about getting off the train. On the contrary, he stated positively, and every time that his attention was called to it, that he did not know whether it was the conductor or not. The only answers tending to show that it was the conductor were put into the mouth of the witness by his examiner. On the other hand, the conductor testified in the most positive terms that he did not have any communication with the defendant,—no communication whatever; that he knew from his ticket that his destination was Fairfax; that he ordered the brakeman to stop the train; that the brakeman gave the signal to stop, set brakes, and the train slowed down; that he (the conductor) went on the rear platform of the caboose just as the caboose passed the depot, to call the number of the train to the operator; that he did not see the plaintiff on the platform; that soon after the caboose passed the depot he looked for plaintiff on the platform, and thought he was off, and directed the brakeman to let the train go on. The brakeman testified that he spoke to plaintiff when nearing Fairfax, and told him that the train would stop for him to get off; that he did not tell him that he would have to jump off, or

anything of that kind. He also testified that he gave the signal to stop, and that the train was slowed down; and there is absolutely no conflict in the evidence on this question. The .train would have stopped to land the plaintiff if he had not jumped while it was in motion.

It is contended by counsel for appellee that, as the conductor testified that he was on the rear platform when the train passed the depot, he must have seen the plaintiff before he jumped from the platform. But this does not tend to prove that the conductor ordered the plaintiff to jump off. The plaintiff testified that the order was given to him a quarter of a mile before reaching the depot. He testified upon that subject as follows: "When I jumped off the caboose, nobody else was standing on the platform when I jumped;" and "there was no person on the rear platform with me when the caboose passed the depot, or when it passed the east switch." It is evident, therefore, that, if any importance was attached to the fact that the two men were on the platform at the same time, it was wholly without warrant; for the plaintiff himself does not claim that he was induced to jump by reason of anything that occurred when the conductor was on the rear platform. For the purposes of this case, the fact of the two men being on the rear platform at the same time had no more significance than if they had been one thousand miles from each other.

In addition to the general verdict for the plaintiff, the jury answered certain special interrogatories submitted to them by the court, which, with the answers thereto, are as follows: "(1) Did the plaintiff, in jumping from the car, act as a person of ordinary prudence and caution would have done under like circumstances? *Answer* (by jury). Yes. (2) How far from the station at Fairfax, and on which side of it, was the rear platform of the caboose when plaintiff jumped off? *A.* (by jury). From one hundred to one hundred and fifty feet west of station. (3) Was the usual signal for stopping the train at Fairfax given the night of the accident? *A.* (by jury). Yes. (4) Had the brakeman applied the

brakes on the caboose for the purpose of stopping the train before plaintiff jumped off? *A.* (by jury). Yes. (5) Was the train in the process of stopping at the time plaintiff jumped off? *A.* (by jury). Yes. (6) Did the conductor direct the plaintiff to jump off the train while in motion? • *A.* (by jury). Yes; we believe he did. (7) Did either the conductor or brakeman tell plaintiff the train would stop at Fairfax? If so, which one of them? *A.* (by jury). We believe the conductor did. (8) Was the plaintiff intoxicated, either partially or otherwise, at the time of the accident? *A.* (by jury). No."

The answers to the third, fourth and fifth interrogatories are in full accord with the undisputed evidence. They show that the plaintiff was without excuse in jumping from the train. The answer to the sixth interrogatory could have been answered in a categorical manner, the same as those preceding it. For what reason a qualified answer was given we cannot tell. The answer was sufficient in form, it is true, but, in our opinion, there was no warrant in the evidence for any such finding. That this interrogatory ought to have been answered in the negative appears to be so well grounded as to amount to almost absolute demonstration. REVERSED.