JOHN GALLOWAY, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

1. **Railroads:** INJURY IN JUMPING FROM TRAIN: NEGLIGENCE: EVIDENCE. In an action for personal injuries the testimony of the plaintiff was to the effect, that he went upon the defendant's vestibuled train to assist his wife and child, who were about to take passage thereon in the nighttime; that when he went to get off, the door was fastened, and that the brakeman told him he could not get off,

that it would break his neck; whereupon the plaintiff stated that he would go to the next station and pay his fare; that the brakeman then opened the door and, after looking back, told the plaintiff he could step down on the lower step and jump far enough so that the train would not hit him, and that he would be all right; that the plaintiff asked the brakeman to pull the bell, but he answered either that he could not or would not, and said to the plaintiff, "You get off," and closed the door, and left him in the dark; that he could not tell whether the train had more than left the depot, and it seeming not to be going fast, he jumped from the train and was injured. *Held*, that although the testimony introduced by the defendant strongly tended to show that the plaintiff was negligent, and that the defendant was not, the evidence was sufficient to support a verdict for the plaintiff.

2. ――――: ――――: ――――: ADVICE OR COMPULSION.   In such case, the words of the brakeman, "You get off," emphasized by his closing the door behind the plaintiff, tended to show that the latter was required to leave the car, or at least that he had reason to believe that he was so required.   Therefore, *held*, that his jumping off was not necessarily such a voluntary and negligent act as to make it error to submit the question of the defendant's negligence to the jury, and that the evidence was sufficient to sustain a verdict for the plaintiff on that question.

3. ――――: ――――: CRIMINAL OFFENSE: NEGLIGENCE.   The act of the plaintiff in jumping from the moving train was not necessarily negligence on the ground that it was criminal, under section 2, chapter 148, Laws of Sixteenth General Assembly, which makes it a public offense for a person to get off a moving car without the consent of the person having the same in charge, since the evidence showed that the plaintiff was ordered by the brakeman to get off, and there was such a conflict in the evidence, as to the authority of the brakeman in such cases, as to justify the submission to the jury of the question whether or not he was in charge of the car within the meaning of the statute.

4. Negligence: DEFINITION: INSTRUCTION TO JURY.   An instruction to the jury that "Negligence consists in doing something, or omitting to do something, which a person of ordinary prudence and care would not have done, or would not have omitted to do, under like or similar circumstances;" *held*, to be a correct definition, and not erroneous as an instruction on the ground that it ignored the facts in the case.

5. Railroads: JUMPING FROM TRAIN UPON ORDER OF BRAKEMAN: INSTRUCTION.   The court instructed the jury that, if the brakeman told the plaintiff a falsehood as to where the train was at the time, and thus deceived him as to the speed of the train, it might excuse the rashness of the plaintiff in jumping from the train.   *Held*, not erroneous, the question of the brakeman's authority in the premises being fully submitted to the jury in other instructions given.

*Appeal from Appanoose District Court.*—HON. E. L. BURTON, Judge.

TUESDAY, JANUARY 31, 1893.

ACTION to recover for personal injuries received by the plaintiff by jumping from one of the defendant's passenger trains while in motion, because, as is alleged, ·of his being willfully and negligently urged and compelled by the defendant's brakeman to do so. The defendant answered, denying every allegation in the petition. The case was tried to a jury, and a verdict for the·plaintiff and answers to certain interrogatories returned. Judgment was entered on the verdict. The defendant appeals.—*Affirmed.*

*Cummins & Wright, T. S. Wright,* and *Tannehill, Vermillion & Vermillion,* for appellant. ·

*George D. Porter,* for appellee. ·

GIVEN, J.—I. The appellant contends that the evidence fails to show negligence on the part of the defendant and that it does show negligence

**1. RAILROADS: injury in jumping from train: negligence: evidence.** on the part of the plaintiff, directly contributing to the injury complained of. These inquiries involve a careful consideration of the petition as to the negligence charged, and of the evidence relied upon to support that charge. The following facts, about which there is no dispute, will enable us to better understand the evidence as to negligence.

There is no question but that on the morning of October 14, 1890, the plaintiff's wife took passage on the defendant's passenger train, bound west, at Centerville, at 4:45. That she had with her a child aged about five, and two or three parcels. On the arrival of the train from the east the plaintiff and his wife went

immediately into one of the cars; she carrying the parcels and he following with the child. The car being pretty well filled with passengers they passed along to about the middle of the car, when the plaintiff hearing the call, "All aboard," set the child down and hastened to the door by which he entered, for the purpose of getting off the car. That he jumped off the car when moving at about twenty miles an hour, and was violently thrown to the ground, and his arm broken. The train was what is known as a "Vestibule Train," with doors on the right and left of each car platform in addition to those in the end of each car. The train was stopped for about two minutes at the station, and at the time of the accident it was yet dark. It is alleged in the petition as follows:

"When the plaintiff reached the door he found said door locked and his exit prevented, and the brakeman on the said train refused to let the plaintiff out, and the brakeman was informed by said plaintiff that he would ride to the next station, whereupon the said brakeman, willfully, negligently, and without cause, opened the door, informed the plaintiff that the train had not yet left the depot, that he could safely and easily get off, and urged and compelled the plaintiff to attempt to get off the train; that the plaintiff believed the statement that the brakeman told him to be true, and in attempting to alight from said train, was thrown violently to the ground, breaking the arm of the plaintiff, and violently stunning him; that said statement so made by the brakeman, was false, but, it being dark, the plaintiff was unable to see. In truth and in fact the train had left the depot and was running at the rate of thirty miles an hour, unknown to the plaintiff and well known to the defendant's brakeman, who well knew all the facts, but willfully urged and compelled the plaintiff to alight from said train; the plaintiff using due care on his part."

There is a marked conflict in the evidence for the plaintiff and for the defendant as to what was said and done at the times the plaintiff got on and off the car. The only evidence on behalf of the plaintiff as to what occurred at those times is his own. As the jury had a right to reject, as not entitled to credit, the conflicting testimony introduced by the defendant, and to accept as true that of the plaintiff, and find their verdict thereon, we must look to the plaintiff's testimony alone in determining whether there is evidence to sustain the verdict as to negligence on the part of the defendant, and care on the part of the plaintiff.

The plaintiff testified, in substance, as follows: He states that when they came to the car a brakeman standing with a lantern said: "'What point are you going to?' I says, 'She is going to Horton, Kansas, but I am not going.'" That, when he returned to the door to get out, "I could not open it. It was fastened. The same brakeman was standing on the opposite platform from the one I was standing on. He was standing in the door that went into the other car. I told the brakeman I wanted to get off; I was not going. He said, 'If you ain't going, you have no business on here.' He says, 'It is my place to help women and children on and off the train. I said, 'Why don't you help them, then?' He says to me, 'You can't get off,' and I says, 'I will go to the next station with you. I am no dead beat on here. I will pay my way.' And when I told him that he opened those doors. I do not know how he opened them, but he opened them, and shoved them back, and he looked back, and says: 'The second hind car is not away from the platform.' And he says: 'You can step down on the lower step, and jump far enough so that the train won't hit you, and you will be all right.' Before I stepped down on the steps, I says to him, 'Pull the bell,' and he either said he could not or would not, and says, 'You get off;' and

I started down the steps, and when I got down on the second step he closed the doors behind me, and that turned the lantern light off of me. I could see the ground when he had the lantern there, but could not when he closed the doors." He further states that he could not tell at that time whether the train had any more than left the depot; that it did not appear to be going fast; and that, when the brakeman told him to jump far enough so that the train would not hit him, he said it would be all right. Upon cross-examination he stated that, it was not over two or three minutes from the time he tried to open the door until the brakeman opened it. "When he opened the door, and after he told me to get off, I stepped down onto the second step. Did not see any platform. I looked to see whether the second hind coach had left the platform. I stood on the steps about a minute. Do not think I stood there a minute." "After I got on the steps, he said 'Get off,' and then I jumped. He told me before he opened the door that it would break my neck." On re-examination he stated that he did not mean that he was on the lower step a minute. "I meant on the platform."

Mr. Bradley, called by the plaintiff, testified that he got on the same car after it was moving, and met the plaintiff about two steps, or three, inside the car, going towards the door; that he went to the door witness came in at, and that the door was open when he came in. The only other witness called by the plaintiff in chief were his wife, who corroborated him as to what took place on their going onto the car, and Dr. Stephenson, as to the extent of the injury. In rebuttal William Trigg, and W. M. Fawcett were called, as to the duties of brakemen; and the plaintiff and his wife were recalled, as to the identity of the brakeman. They testified that it was another than the one who testified for the defendant. Mr. Bradley was recalled, but gave no different or additional evidence. The tes-

timony on behalf of the defendant tended strongly to show that the defendant was not negligent, and that the plaintiff was; but for reasons already stated, that evidence need not be further noticed.

II. There is contention whether the appellant's brakeman had such authority as that the appellant is bound by his acts in the matter under consideration. Passing that question, and assuming that he had, we inquire whether his acts and declarations, as stated, so tend to establish the negligence charged as to justify the court in submitting that question to the jury and in sustaining the verdict. If the brakeman had authority to require the plaintiff to get off the car, it would be clearly negligence for him to so require under the circumstances that attended the plaintiff's getting off. The charge is that the brakeman urged and compelled the plaintiff to jump off the car, not by the use of physical force, but by giving him reason to believe that he was required to then leave the car. The plaintiff came to the door for the purpose of getting off, and when he made that purpose known the brakeman told him he could not get off; that it would break his neck. No objection was made to the plaintiff's remaining on the car, when he said he would pay his fare, and go to the next station. The brakeman opened the door, and looked, and said: "The second hind car is not away from the platform. You step down on the lower step, and jump far enough so that the train won't hit you, and you are all right." It is alleged and argued that this statement was not true. The plaintiff says that it was three or four hundred yards from the depot, where he alighted. Considering the distance, the speed of the train, and the time that intervened between the brakeman's looking and the plaintiff's jumping, it seems highly probable that the train was as stated by the brakeman when he looked.

2. ——: ——: ——: advice or compulsion.

Before going down on the steps the plaintiff asked the brakeman to pull the bell, and was told that he could not, or would not. Therefore, he went down knowing that the train would not be slowed or stopped, or at least with no reason to believe that it would be. He must have known that the speed was being increased. Certainly, thus far, there is no evidence of compulsion, but it appears that, immediately upon telling the plaintiff that he could not pull the bell, the brakeman said, "You get off," whereupon the plaintiff started down the steps, and the brakeman closed the door, thereby shutting off the light of his lantern from the plaintiff, and leaving him to get off in the dark. It does not appear whether the door could be opened from the outside, but be that as it may, the brakeman's words, "You get off," and his shutting the door, certainly tend to show that the plaintiff was required by the brakeman to leave the car, or at least that he had reason to believe that he was so required. The appellant cites cases holding that information, advice, or the expression of an opinion, in such cases, by the conductor, does not amount to a requirement. In the words last quoted there is neither information, advice, nor opinion, but a positive order, emphasized by closing the door. The case is unlike *Lindsey v. Chicago, R. I. & P. Railway Co.*, 64 Iowa, 407, and *Vimont v. Chicago & N. W. Railway Co.*, 71 Iowa, 58. In the former the brakeman told the passenger, if he was going to get off, "You had better be getting off, and that quick." In the latter case the words were, "Jump off quick, if you are going." This court held that in neither case did the words constitute a requirement to leave the train. It was left to the discretion of the passenger whether to do so or not. We think there was no error in submitting the question of the defendant's negligence to the jury, nor in sustaining the verdict upon that question.

III. The defendant claims that the plaintiff was guilty of contributory negligence, for two reasons,

3. ——: ——: criminal offense: negligence.

namely, that he had committed a crime in getting off the cars as he did; and that, independent of the statute, his act was in itself negligence. Section 2, chapter 148, Acts Sixteenth General Assembly (section 5203, McClain's Code), contains this provision: "If any person not employed thereon, or not an officer of the law in the discharge of his duty, without the consent of the person having the same in charge, shall get upon or off any locomotive engine or car of any railroad company, while said car is in motion, * * * he shall be guilty of a misdemeanor." In *Raben v. C. I. R'y Co.*, 74 Iowa, 733, this court held that if the plaintiff's act in getting from the car was a misdemeanor, under said section 2, she can not recover, and that in order to recover she has the burden to prove that she so alighted with the consent of the conductor, thus showing that her act was not forbidden. There is evidence tending to show that the plaintiff acted with the consent of the defendant's brakeman. He not only advised the plaintiff how to get off, but told him to do so, and at no time interposed any objection to his getting off. The defendant contends that the brakeman was not in charge of the car, and therefore could not give consent that would excuse the plaintiff's guilt or negligence. Upon this subject the defendant introduced printed rules 35 and 36 of the company, and the testimony of the conductor and one of its brakemen. In rebuttal the plaintiff introduced the testimony of Mr. Trigg and Mr. Fawcett. From this testimony it appears quite clearly that the general direction and management of the train is vested in the conductor, and that the brakemen are under his authority. There is a conflict, however, as to the power and duties of the brakeman in cases like this. We think the question whether this brakeman had author-

ity to consent to the plaintiff's getting off the car was properly left to the jury. It is certainly very clear that if the plaintiff jumped from that car as he did, voluntarily, he was guilty of negligence, and in such case it would be the duty of the court to so declare, as a matter of law. If he did not do so voluntarily, but in obedience to the order of the person in charge of the car, or under circumstances that warranted him in believing that he was required to then get off the car by the person in charge, it becomes a question of fact whether, under all the circumstances, he was guilty of negligence in obeying the order. *Herman v. C., M. & St. P. R'y Co.*, 79 Iowa, 161, is not in point. In that case it was claimed that the conductor had commanded the plaintiff to jump off the train. The plaintiff testified that some person told him so, and the court held that there was no evidence that it was the conductor. There was no error in submitting the question of contributory negligence, nor in giving the instructions numbered 11, 12, and 13.

IV. At the close of the testimony for the plaintiff in chief, the defendant moved for a verdict upon the ground that there was no testimony to support a verdict for the plaintiff, that the evidence showed contributory negligence, and that the plaintiff was guilty of a misdemeanor. The appellant contends that this motion should have been sustained, for the reason that the plaintiff had offered no evidence as to the duties or authority of the brakeman. We have already held that the question of contributory negligence was properly submitted to the jury upon the whole evidence. The evidence for the plaintiff tended to show that the brakeman was at the time in charge of the car, and that he not only consented to but required the plaintiff to jump from it. With this evidence on behalf of the plaintiff, there was no error in overruling defendant's motion.

V. The appellant's remaining complaint is of cer-

tain paragraphs of the charge of the court. The sixth

**4. NEGLIGENCE:** definition: instruction to jury.

is as follows: "Negligence consists in doing something, or omitting to do something, which a person of ordinary prudence and care would not have done, or would not have omitted to do, under like or similar circumstances." The appellant cites *Pennsylvania Co. v. Marion,* 104 Ind. 239, 3 N. E. Rep. 874, and contends that this instruction makes the negligence of the plaintiff to depend on the question whether a person of ordinary prudence would have done the same thing. As said in the case cited, "the formula used is that frequently adopted in attempting to define 'negligence.'" It is there said: "Whether the plaintiff was negligent or not depended upon the particular facts admitted or satisfactorily proved in the case." This instruction does not ignore the facts, but makes them the very groundwork of the inquiry. True, "the most prudent men are not always exempt from carelessness, and, when actually negligent, the law charges the same consequences to their negligent conduct as to similar conduct in others." But there is no better standard by which to measure the acts of men, as to negligence, than to ask what persons of ordinary prudence and care would have done under the same circumstances; and such is the rule of this instruction.

VI. The tenth instruction is complained of because it tells the jury that if the brakeman told the

**5. RAILROADS:** jumping from train upon order of brakeman: instruction.

plaintiff a falsehood as to where the train was at the time, and this deceived the plaintiff as to the speed of the train, it might excuse the rashness of the plaintiff. In other paragraphs the question of the brakeman's authority was fully submitted, and in connection with them the tenth paragraph is correct. The third and fourth paragraphs are criticised as too general, and not confined to the issues, in that they are not restricted to

the negligence charged. The negligence charged was plainly set out in a preceding instruction, and these instructions must have been understood as referring to that charge.

We do not discover any errors from which the judgment of the district court should be disturbed, and the same is therefore AFFIRMED.