OLLIE SCHALK, Appellee, v. L. F. SMITH et al., Appellants.

No. 44090.

JANUARY 18, 1938.

Peisen & Soper and Sullivan, McMahon & Linnan, for appellee.

Harrington & Lowe, Shumway & Kelly, and McCoid, McCoid & McCoid, for appellants.

ANDERSON, J.—Plaintiff, appellee, Ollie Schalk, was riding in the back seat of an automobile driven by her husband and a collision occurred between the Schalk automobile and a truck being operated by one Henry Zwiefel an employee of the A. J. Smith Transfer Company. L. F. Smith and A. J. Smith, defendants, appellants, are husband and wife, and the plaintiff alleges that L. F. Smith and A. J. Smith were operating and conducting a freight transportation business under the firm name and style of "A. J. Smith Transfer Company", and under a trucker's license which had been issued to L. F. Smith by the Board of Railroad Commissioners of the State of Iowa; and that Henry Zwiefel was an employee and agent of the said transfer company and at the time of the accident was operating the transfer company's truck in the scope of his employment and in the discharge of his duties with the knowledge and consent of both A. J. and L. F. Smith. The facts as we gather them from

the abstract show that on the 28th day of February, 1936, the Chevrolet truck, owned and operated by the transfer company, was being driven by Henry Zwiefel, an employee of the company, in the discharge of his duties as such employee, and that he was proceeding in a northerly direction on federal highway No. 69 north of the city of Ames, Iowa; and the Schalk car in which the plaintiff was riding in the rear seat was proceeding in a southerly direction on the same highway. There had been a snow storm and blizzard on the preceding day, and in many places on the highway there was only a one-way passage made by road snowplows cutting a path through deep snow drifts. This situation existed at the place of the accident, which place is known as Anderson Hill. The plaintiff's car was approaching the top of this hill from the north following what is known in the record as the "Blue car" operated by Robert Blue of Eagle Grove, Iowa, and behind the plaintiff's car was another car being driven by one Richards of Webster City, Iowa. Commencing near the top of the so-called Anderson hill there were some 300 or 400 feet on the highway from which the snow had been removed by a snowplow only on the east half of the pavement. The plaintiff's testimony is that both the Blue car and the Schalk car had entered this one-way passage through the snow bank proceeding southerly when the defendants' truck suddenly appeared over the top of the hill from the south traveling at about forty-five miles per hour; that the truck was swaying and the driver turned out on the shoulder barely missing the Blue car and then turned in toward the center of the cleared part of the paving striking the left side of the Schalk car and severely injuring the plaintiff; that the driver of the Schalk car saw the movement of the truck and nosed the front end of his car into the snowbank and brought it to a stop; that after the collision occurred the truck went on down the hill to the north a distance of from 400 to 600 feet before it was brought to a stop. The testimony of the defendants indicates that the truck was not being driven in excess of twenty-five miles an hour, and that the Schalk car was slowing down and the driver either put his brakes on too hard or did something else and the back end of the Schalk car skidded over to the east and was still skidding at the time of the collision. Apparently no effort was made by the truck driver to bring his truck to a stop. The driver testifying

that if he had put on his brakes the chances are that he would have thrown the whole truck into the Schalk car.

The specifications of negligence alleged by the plaintiff and as submitted to the jury were in substance as follows: (1) In failing to bring said truck to a stop before striking the plaintiff's car. (2) In driving said truck at a dangerous and excessive rate of speed up over the top of a hill or knoll where his vision was obstructed, when the surface of the highway was icy and slippery, at such a rate of speed that he was unable to bring the same to a stop after discovering the presence of other vehicles on the other side of the hill. (3) In failing to have said truck under control. (4) In failing to give one-half of the space available for travel by turning to the right when meeting the approaching car. (5) In driving a freight carrying vehicle equipped with pneumatic tires at a speed in excess of thirty-five miles per hour.

Plaintiff's claim for damages under the specifications of negligence above recited was submitted to the jury under carefully prepared, full, and proper instructions, and the jury found by its verdict that the accident occurred by reason of the alleged negligence of the driver of the defendants' truck and returned a verdict for the plaintiff. A motion for a new trial was overruled and the defendants appeal.

The first seven assignments of error pertain to alleged errors on the part of the court in the giving of instructions. Assigned errors, Nos. 8 and 9, contain complaints as to the failure of the court to give certain instructions on its own motion, and under division 10 of appellants' brief and argument no assignment of error is made.

 The first objection to the instructions complained of by appellants is as to the giving of instruction No. 5, defining negligence. The instruction complained of is in the following language:

"Negligence means the want of ordinary care or the failure to use ordinary care. Ordinary care consists in doing everything which a person of ordinary care and prudence would do under the circumstances; and also consists in avoiding the doing of everything which a person of ordinary care and prudence would not do under the circumstances."

The objection to this instruction, it seems to us, is some-

what hypercritical. Appellants argue that the word *ordinarily* should be inserted in the quoted instruction in two different places so that the instruction would read:

"Ordinary care consists in doing everything which a person of ordinary care and prudence would '*ordinarily*' do under the circumstances; and also consists in avoiding the doing of everything which a person of ordinary care and prudence would not '*ordinarily*' do under the circumstances."

A person of ordinary care and prudence could not act otherwise than "*ordinarily*" under the same or similar circumstances and the addition of the word *ordinarily*, as suggested by the appellants, would add nothing to the instruction as given by the court. We have been unable to find any case in which it is even suggested that the word ordinarily should be added to this instruction. The true test to be submitted in an instruction of this kind is whether or not the defendant exercised that degree of care which a person of ordinary care and prudence would have exercised under the same or similar circumstances, and this test has been laid down in many cases by this court. Galloway v. C. R. I. & P. Railway, 87 Iowa 458, 54 N. W. 447; McCaull v. Bruner, 91 Iowa 214, 59 N. W. 37; Dreier v. McDermott, 157 Iowa 726, 141 N. W. 315, 50 L. R. A. (N. S.) 566; Cox v. Des Moines Electric Light Co., 209 Iowa 931, 229 N. W. 244; Leete v. Hays, 211 Iowa 379, 233 N. W. 481; Smith v. City of Hamburg, 212 Iowa 1022, 237 N. W. 330; Butters v. C. M. St. P. & P. Railway Co., 214 Iowa 700, 243 N. W. 597; Buchanan v. Hurd Creamery Co., 215 Iowa 415, 246 N. W. 41; Fortman v. McBride, 220 Iowa 1003, 263 N. W. 345; Mescher v. Brogan, 223 Iowa 573, 272 N. W. 645.

Appellants next assignment of error complains of the giving of instruction No. 23, in which the court submitted only two forms of verdict. First, permitting the plaintiff to recover against all of the defendants; and second, a verdict for the defendants. The appellants contend in their argument that the submission of the one verdict as against all defendants was erroneous and prejudicial "in that under the evidence the jury would have been warranted in finding against A. J. Smith and Henry Zwiefel and in favor of L. F. Smith." And appellants argue that there is no evidence in the record warranting the submission to the jury of the liability of L. F. Smith, and that

the court erroneously treated the liability of L. F. and A. J. Smith as joint, and for the further reason that the evidence showed that L. F. Smith had not been interested in the Smith Transfer Company for a considerable period prior to the accident.

It may be appropriate in passing on this assignment of error to recite some additional facts as to the ownership and operation of the Smith Transfer Company. It appears that this business was conducted from the residence of the Smiths. The office and a storeroom were there located. The business was operated under the name of Smith Transfer Company. The testimony of the Smiths, which was introduced by the plaintiff, shows that some few months prior to the accident in question L. F. Smith caused the registration of two trucks owned and operated by the transfer company to be changed from himself to his wife, A. J. Smith. One of these trucks was later traded for the Chevrolet truck that was involved in the accident in this case. On the Chevrolet truck was painted the name "Smith Transfer Company", and also the permit number issued by the Board of Railway Commissioners to L. F. Smith. Prior to the transfer of the registration of the trucks to the wife she had assisted in the conduct of the transfer company's business. And after the transfer of the trucks she had continued to operate or assist in the operation of the business practically the same as before, except at times when her husband, L. F., was on the road as a traveling man. Before the transfer of the registration numbers the transfer company had contracts for hauling freight with two jobbers. These contracts were not assigned to Mrs. Smith, but were continued as before the transfer of the trucks. No new contracts were made by Mrs. Smith or the transfer company for the hauling of freight after the transfer of the registration of the trucks. L. F. Smith testified that he knew the trucks were being operated under the permit issued to him and under the name of Smith Transfer Company, and that the truck in question was being driven by Henry Zwiefel prior to the transfer of the registration and up to the time of the accident. In testifying as to the transaction involving the trading for the Chevrolet truck, L. F. Smith said that the Chevrolet truck was ordered some time before, but *we* did not get it until some time in December. Mrs. Smith testified that after the transfer of the registration of the trucks the busi-

ness and the trucks were operated the same as before with the same drivers and fulfilling the same contracts, and without obtaining any transfer of the state permit, and when asked in reference to the transfer of the registration of the trucks if there was anything more done than the changing of the registration certificates, she answered, "I don't know." It does not matter who owned the Chevrolet truck that was involved in the accident if it was being used in the business of the Smith Transfer Company, as the record shows that it was. The question is, was L. F. Smith a partner in that business, and was he liable for damages resulting from the accident in question? Outside of the record evidence as to the interest of L. F. Smith in the transfer company we should refer to some statutory provisions in determining his liability. Section 9866-a1 provides that it shall be unlawful for any person or copartnership to engage in or conduct a business under a trade name other than the true surname of each person or persons having any interest in such business, unless they shall file with the county recorder a verified statement showing the name, postoffice address, and residence of each person owning or having any interest in the business; and, section 9866-a2 provides that:

"A like verified statement shall be filed of any change in ownership of the business, or persons interested therein, and the original owners shall be liable for all obligations until such certificate of change is filed."

It is conceded that neither of the sections mentioned was complied with. Then again the plaintiff alleged in her petition "that after the transfer of said trucks to the said A. J. Smith, the said defendants, L. F. Smith and A. J. Smith, continued to use and operate said trucks in the conduct of said transportation business under the name and style of "A. J. Smith Transfer Company." This was an allegation of a partnership relation which under Code section 11208 must be specifically denied and the facts related in order to defeat the allegation. There was no specific denial. Section 11207 provides that a plaintiff in suing a partnership or in any way implying the existence of a partnership may aver the same generally, or as a legal conclusion; and section 11208 provides that if such allegations are controverted it "shall not be sufficient to do so in terms contradictory of the allegation, but the facts relied on shall be speci-

fically stated." This court has had these statutory provisions under consideration in several cases. In Richards v. Hellen & Son, 153 Iowa 66, 73, 133 N. W. 393, 395, where this question was raised we said:

"Again, the petition charges a partnership and there is no such denial of that allegation as the statute requires."

In the case of Jordison v. Jordison, 215 Iowa 938, 247 N. W. 491, we held that the court did not err in telling the jury that a partnership existed where the plaintiff's petition so alleged and there was no specific denial of such allegation.

In University v. Emmert, 108 Iowa 500, 503, 79 N. W. 285, 286, we held, in referring to code sections which were identical with the present code sections above mentioned that:

"denial of partnership or corporate capacity is made a special defense, and can only be set out by specifically alleging the facts relied on. * * * If it was not a partnership or corporation, a general denial did not raise that issue, for in such event the facts relied on must be specifically stated. The averment of want of capacity or of legal capacity was a mere legal conclusion."

We are constrained to hold upon the record evidence, as well as upon the application of the statutes above quoted and referred to, that there was no fact question as to the liability of L. F. Smith, separate from the other defendants, that would warrant a separate submission to the jury of the issue raised under this assignment. The appellants conceded in their brief and argument that the case should have been submitted as to the liability of the defendants other than L. F. Smith, and that the jury would be warranted under the record in finding the other defendants liable. The appellants also state in their argument that "the only basis upon which L. F. Smith could be liable would be if he was the owner or part owner of the truck involved in the collision." This is certainly not a correct statement of law. His liability is not at all dependent upon the ownership of the truck in question. It is predicated upon the fact that he was operating a freight transportation business, and that the truck involved in the accident was engaged at the time in the performance of the business of such transportation company. See Heintz v. Iowa Packing Co., 222 Iowa 517, 268 N. W.

607; Hughes v. Telephone Corp., 211 Iowa 1391, 236 N. W. 8; Lembke v. Fritz, 223 Iowa 261, 272 N. W. 300.

 The next assignment of error questions the language in Instruction No. 11. The first part of this instruction submits the second specification of negligence heretofore referred to in effect that the driver of the truck drove the same at a high, dangerous, and excessive rate of speed over the top of a hill when the surface of the highway was icy and slippery, and at such a rate of speed that he was unable to bring the same to a stop after the discovery of the presence of other vehicles on the highway; and the second part of the instruction is as follows:

"If, however, you find that the defendant Henry Zwiefel failed to comply with the requirements of this statute without a legal excuse for so doing, the plaintiff would be entitled to recover damages upon this ground of alleged negligence unless you further find that the failure of Henry Zwiefel to comply with this statute as above set forth, if he did so fail, was not the proximate cause of the accident and injury to plaintiff as the term proximate cause has already been defined and explained to you."

The complaint against this instruction is that it places upon the defendants the burden of showing the legal excuse for non-compliance with the statute. We do not find that the burden was so placed in this instruction. It simply and plainly states that if Zwiefel did the things alleged against him "without legal excuse" he would be guilty of negligence. The complaint against this instruction is also hypercritical. The basis upon which the appellants make this contention is found in Rich v. Herny, 222 Iowa 465, 269 N. W. 489. The instruction in the cited case is not at all similar to the instruction in the case at bar. In the instruction in the Herny case the court told the jury that the defendant would be guilty of negligence unless he had shown by the *preponderance of the evidence* a legal excuse. No such language is found in the instruction here complained of.

In the succeeding assignments of error the appellants complain as to the submission or the manner of submission of the various grounds of negligence set out in the plaintiff's petition. We have examined all of these assignments of alleged error and are not disposed to further and unnecessarily extend this opinion

to notice them in detail. We have carefully considered the court's instructions as a whole and are constrained to hold that they very fully, fairly, and properly submitted to the jury all issues of fact which should have been submitted, and that no prejudice could have resulted therefrom.

■■■ Complaint is made as to the question of contributory negligence or the failure upon the part of the court to instruct as to the legal requirements affecting the driver of the car in which the plaintiff was riding. There is no claim that the negligence of the driver of the car in which plaintiff was riding was imputable to the plaintiff, and the discussion of the possible negligence of the driver has no place either in the submission of this case or in this opinion, unless some negligence of the driver of the car in which plaintiff was riding was the sole proximate cause of the accident and resulting injury.

■■■ Complaint is made that the court did not instruct the jury as to the rule of sudden emergency. No request for such instruction was made, and there was no sudden emergency unless it was created by the act of the driver of the truck, Zwiefel. And in such event the existence of the sudden emergency could not be taken advantage of by the defendants.

As we have above stated, we have studied this record, including the instructions of the court, carefully, and hold that there was no error occurring in the trial of the case; that the verdict is amply supported by the record; that the defendants had a fair trial, and it follows that the case must be affirmed.— Affirmed.

STIGER, C. J., and MITCHELL, KINTZINGER, DONEGAN, HAMILTON, and SAGER, JJ., concur.