Sharalan J. WELTE and Ronald
Welte, Appellants,

v.

George BELLO, Appellee.

Sharalan J. WELTE and Ronald
Welte, Appellants,

v.

MERCY HOSPITAL, A Corporation,
Appellee.

No. 90–1723.

Supreme Court of Iowa.

March 18, 1992.

John J. Carlin of Carlin, Hellstrom & Bittner, Davenport, for appellants.

Robert V.P. Waterman, Jr. of Lane & Waterman, Davenport, for appellee Dr. Bello.

Ralph H. Heninger and Ralph W. Heninger of Heninger & Heninger, Davenport, for appellee Mercy Hosp.

ANDREASEN, Justice.

A medical patient who was admitted to a hospital for surgery on her nose was unintentionally burned on the arm when an anesthetic, that was to be injected into her vein, infiltrated the surrounding tissue. The patient and her husband brought malpractice actions against the anesthesiologist and the hospital. The claims alleged negligence in the administration of the anesthetic and a failure to secure informed consent of the patient. The claimants urged the doctrine of res ipsa loquitur supported submission of their general negligence claim.

Prior to trial, the district court granted partial summary judgment to the anesthesiologist upon the general negligence claim. Appeal is taken from the summary judgment and the judgments entered by the district court upon jury verdicts for the anesthesiologist and the hospital.

## I. Background.

On April 26, 1986, Sharalan J. Welte was admitted to Mercy Hospital (Mercy) for surgery for the correction of a deviated septum. Approximately three hours before surgery, Welte conferred with her surgeon about the procedure. She then conferred with Dr. George Bello who informed her that he would be the anesthesiologist. He told her that he would be administering sodium pentothal through an IV inserted into a vein in her arm. He told her about the potential risks associated with general anesthesia, including sore throat, bronchial spasms, cardiac irregularities and, in rare cases, death. Welte read and signed a written "consent to operate, administration of anesthetics, and rendering other medical services, Mercy Hospital, Davenport, Iowa." The consent form provided "I consent to the administration of anesthesia to be applied by or under the direction and control of Dr. Bello." Also on the form was the statement that "anesthesia and its complications have been explained and accepted." The consent form was signed by both Welte and Dr. Bello.

After talking with the doctors, Welte was transferred to a pre-operation room. While in this room, nurse Delores Testroet inserted a catheter into the vein of Welte's right arm. To place a catheter in the vein, the nurse used a one unit needle and catheter. Welte complained of pain after the IV had been inserted. The nurse checked the IV and concluded that it was properly positioned inside the vein. Welte was then transferred from the pre-operation room to the operating room. Dr. Bello and two nurses in the operating room testified they performed tests to determine that the IV was properly positioned. Using a syringe with a plunger, Dr. Bello began injecting drugs through a port in the IV. Dr. Bello testified that after he had used the syringe to push a test dose of sodium pentothal into the vein without any problem or resistance, he then pushed two additional doses of sodium pentothal into the vein. At that time, Welte should have been unconscious but she was not. Dr. Bello then rechecked the site of the IV and, for the first time, noticed swelling on her arm near the point at which the IV had been inserted. He then ordered a nurse to start a second IV in her left arm; Welte soon became unconscious. The initial IV was disconnected and Dr. Bello treated Welte's arm. As a consequence of the sodium pentothal infiltration of the tissues surrounding the vein, Welte sustained first-, second-, and third-degree burns resulting in a large permanent scar.

Sharalan and her husband Ronald (who asserted a loss of consortium claim) (together Welte) commenced two separate malpractice actions; one against Mercy and a second against Dr. Bello. The separate suits were consolidated for trial. Prior to trial, Dr. Bello filed a motion for summary judgment claiming Welte had failed to retain a qualified expert to testify against him and, therefore, they would be precluded from offering any expert testimony at trial. Iowa Code § 668.11 (1987) (failure to designate an expert within 180 days of defendant's answer precludes the expert from testifying at trial). Mercy also filed a motion for summary judgment.

Welte, in response to Dr. Bello's motion, argued that the tort claim of failure to obtain an informed consent did not require expert testimony, and that the general negligence claim would be preserved for trial by the doctrine of res ipsa loquitur.

The district court concluded that any alleged negligence of Dr. Bello was not so obvious as to be within the comprehension of a layperson and that the facts as disclosed in the record did not support a finding that the injury was to a part of the body not involved in treatment. Accordingly, since Welte did not retain a qualified expert to testify against Dr. Bello, the court dismissed the general negligence claim, preserving only the claim for failure to obtain informed consent.

The court denied Mercy Hospital's motion for summary judgment because Welte had offered the deposition testimony of an expert witness, nurse Nancy Copen, upon the negligence claim. In Copen's opinion, a nurse can be certain that an IV is properly inserted into the vein. A nurse can also determine if a needle had entered and exited a vein. The court felt this was sufficient evidence to generate a fact issue on whether the hospital nurses were negligent in the administration of Welte's anesthesia.

The district court submitted the issues of specific and general negligence against Mercy to the jury. The instructions on general negligence were based upon the doctrine of res ipsa loquitur. As to Dr. Bello, the court submitted only the issue of

negligence based upon a failure to secure informed consent. The jury found for Mercy on all issues. As to Dr. Bello, the jury found that although he was negligent in not informing the patient of the potential for burns from sodium pentothal, his negligence was not a proximate cause of Welte's injuries. Accordingly, a verdict was returned in his favor. Welte appeals from these judgments.

## II. *Res Ipsa Loquitur.*

■ Negligence means a failure to use ordinary care. *Schalk v. Smith*, 224 Iowa 904, 907–08, 277 N.W. 303, 305 (1938). As a general rule, a party claiming negligence must identify specifically the acts or omissions constituting negligence. *Rinkleff v. Knox*, 375 N.W.2d 262, 266 (Iowa 1985). The purpose of requiring specification of negligence is to limit the determination of the factual questions arising in a negligence claim to only those acts or omissions upon which a particular claim is in fact based. *Id.* When the ordinary care of a physician is an issue, generally only experts in the profession can testify and establish the standard of care and the skill required. *Perin v. Hayne*, 210 N.W.2d 609, 613 (Iowa 1973). If the standard of care of a physician, surgeon, or dentist is at issue, Iowa law permits only testimony upon the appropriate standard of care by an expert who has qualifications related directly to the medical problem at issue and the type of treatment administered. Iowa Code § 147.139.

■ The doctrine of res ipsa loquitur is an exception to the general rule. It is now well established that the doctrine may be applied in medical and dental malpractice suits in Iowa. *Reilly v. Straub*, 282 N.W.2d 688, 693 (Iowa 1979). Our general rules relating to the doctrine are found in our prior decisions. *Id.* The basic rules were summarized in *Sammons v. Smith*, 353 N.W.2d 380, 385–87 (Iowa 1984), where we stated:

Res ipsa loquitur is a rule of evidence which, when applied, permits but does not compel an inference that defendant was negligent. Under the doctrine the

happening of an injury permits an inference of negligence where plaintiff produces substantial evidence that (1) the injury is caused by an agency or instrumentality under the exclusive control and management of the defendant and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used.

The submission of res ipsa is a matter for the court, and when res ipsa is submitted in a medical malpractice case, the plaintiff is relieved of the burden of showing that specific acts of defendant were below accepted medical standards. The plaintiff still must prove negligence, but he or she does so by convincing the jury the injury would not have occurred absent some unspecified but impliedly negligent act.

Contrary to plaintiff's contention, the court does not find these elements as a matter of law in the process of deciding whether to instruct on the matter of res ipsa loquitur theory, but only concludes there is sufficient competent evidence of the existence of the foundational facts to generate a jury question. From this it follows that defendants may introduce competent evidence tending to disprove either or both foundational elements.

(Citations omitted.) The requirement that the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used formerly relied on the common experience of laypersons; now this common experience may include the common experience of experts. *Reilly*, 282 N.W.2d at 694. With these basic rules in mind, we review Welte's claim of general negligence against Dr. Bello and Mercy.

### III. *General Negligence—Dr. Bello.*

The district court granted partial summary judgment to Dr. Bello prior to trial upon the general negligence claim. If there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, the court should grant summary judgment. Iowa R.Civ.P. 237(c). The issue in this case is whether there is evidence in the summary judgment record upon which liability could be found. *Cox v. Jones*, 470 N.W.2d 23, 26 (Iowa 1991).

If there is sufficient competent evidence of the existence of the foundation of facts to generate an inference of negligence under res ipsa loquitur doctrine, then summary judgment is not appropriate and the issue of general negligence should be submitted to the jury. If expert testimony is required to establish general negligence or the foundational facts and expert testimony is unavailable, then summary judgment is appropriate. *Farley v. Ginther*, 450 N.W.2d 853, 857 (Iowa 1991).

The court concluded the res ipsa loquitur doctrine would not apply because it was not within common knowledge whether such an occurrence would not have happened if reasonable care had been used. The court held, without expert testimony on this issue, Welte failed to provide sufficient evidence to create the inference of negligence.

We have long recognized "in most cases a layman can have no knowledge whether the proper medicine administered or the proper surgical treatment was given." *Evans v. Roberts*, 172 Iowa 653, 660–61, 154 N.W. 923, 925 (1915). However,

> If a surgeon ... undertakes to stich a wound on the patient's cheek and, by an awkward move, thrusts his needle into the patient's eye ... the charitable presumptions which ordinarily protect the practitioner against legal blame where his treatment is unsuccessful are not here available.
>
> It is a matter of common knowledge and observation that such things do not ordinarily attend the service of one possessing ordinary skill and experience in the delicate work of surgery. It does not need scientific knowledge or training to understand that, ordinarily speaking, such results are unnecessary and are not to be anticipated, if reasonable care be exercised by the operator.

*Id.* at 658–59, 154 N.W. 923.

In the following medical malpractice cases we have found the occurrence or event was so obvious as to be within the comprehension of laypersons and required

only common knowledge and experience: *Wiles v. Myerly*, 210 N.W.2d 619 (Iowa 1973) (vascular operation—burned buttocks; "Knowledge and experience teaches us that in the ordinary course of events one undergoing surgery does not sustain an unusual injury to a healthy part of his body not within the area of the operation in the absence of negligence."); *Frost v. Des Moines Still College*, 248 Iowa 294, 79 N.W.2d 306 (1957) (back surgery—ether burn to abdomen; "It is a simple understandable rule of circumstantial evidence with a sound background of common sense and human experience, and difficulty comes only when we attempt to transform it into a rigid legal formula, which arbitrarily precludes its application in many cases where it is most important that it be applied. This is such a case. We should, in applying the rule, not forget the particular force and justice of the rule."); *Stickleman v. Synhorst*, 243 Iowa 872, 52 N.W.2d 504 (1952) (insertion of needle into trachea—puncture to blood vessel in throat; "We are aware of no rule that the nature of an injury must be shown by medical testimony if the injury is such that it may satisfactorily be shown by other evidence. We think the nature of plaintiff's injury is sufficiently shown here."); *Whetstine v. Moravec*, 228 Iowa 352, 291 N.W. 425 (1940) (removal of six teeth—root of tooth found in patient's lung; "It was a mechanical job. It is common knowledge that in extracting a tooth or its roots, neither ordinarily passes into the trachea and thus into the lungs. In fact such an occurrence is most rare. In the words of the authorities it is a matter of such rare occurrence and unusual character, that its very happening carries with it a strong inherent probability of negligence.").

In contrast, in the following cases we have required expert testimony to establish a general negligence claim or the applicable standard of care: *Tappe v. Iowa Methodist Medical Ctr.*, 477 N.W.2d 396 (Iowa 1991) (heart bypass resulting in brain damage; "[B]ecause all the experts testified that stroke is an inherent risk of bypass surgery, the plaintiff was not entitled to the benefit of the res ipsa inference of negli-

gence."); *Cox*, 470 N.W.2d at 23 (cataract removal and follow-up care resulting in detached retina; "Plaintiff's claim of inadequate follow-up care would also ultimately require expert testimony regarding (1) whether a retinal detachment was occurring at the time of the follow-up visits; and (2) the appropriate standard of follow-up care for a cataract extraction."); *Thomas v. Fellows*, 456 N.W.2d 170 (Iowa 1990) ("[T]he alleged malpractice was of a highly technical nature, and the case could therefore not be pursued without expert evidence."); *Donovan v. State*, 445 N.W.2d 763 (Iowa 1989) (replacement of heart valve resulting in staph infection damaging replacement valve; "If a doctor operates on the wrong limb or amputates the wrong limb, a plaintiff would not have to introduce expert testimony to establish that the doctor was negligent. On the other hand, highly technical questions of diagnoses and causation which lie beyond the understanding of a layperson require introduction of expert testimony."); *Forsmark v. State*, 349 N.W.2d 763 (Iowa 1984) (back surgery resulting in paralysis; "A layperson unaided by expert testimony could not say that in the ordinary course of events the injury would not have occurred if reasonable care had been used.").

■ The chemical burn to Welte's arm was caused by sodium pentothal that Dr. Bello injected into her vein which then infiltrated or escaped from the vein into the surrounding tissues. We believe it is within the common experience of laypersons that such an occurrence in the ordinary course of things would not have happened if reasonable care had been used. The insertion of a needle into a vein is a common medical procedure that laypersons understand. It is a procedure that has become so common that laypersons know certain occurrences would not take place if ordinary care is used. *See Wolfsmith v. Marsh*, 51 Cal.2d 832, 337 P.2d 70 (1959) (misinsertion of IV needle resulting in sodium pentothal burn gives rise to res ipsa loquitur instruction). *See also Horner v. Northern Pac. Ben. Ass'n Hosp.*, 62 Wash.2d 351, 382 P.2d 518 (1963); Annota-

tion, *Medical Malpractice: Res Ipsa Loquitur in Negligent Anesthesia Cases*, 49 A.L.R.4th 63 (1986). We conclude the court erred in granting partial summary judgment on the general negligence claim against Dr. Bello. The record establishes circumstances of the occurrence sufficient to defeat summary judgment without the necessity of expert medical evidence.

■ However, even if expert evidence were required, the record was sufficient to defeat the summary judgment motion. Dr. Bello, in his answer to the petition, admitted he administered sodium pentothal by intravenous injection into Welte's arm and that while under anesthesia, she suffered burns. He admitted sodium pentothal has a caustic and burning effect if not properly injected into the vein and that if the catheter is not properly inserted into the vein that injury can occur in the surrounding area. Dr. Bello's retained medical expert, Dr. Edwin A. Maxwell, testified in his deposition that in the usual course of events, an IV instituted for purpose of anesthesia does not infiltrate the surrounding tissue.

### IV. *Mercy Hospital—Instructions.*

■ In its instruction to the jury upon the doctrine of res ipsa loquitur, the court stated:

Sharalan J. Welte must also prove that the occurrence would not have happened if ordinary care had been used. Proof of this requirement rests on common experience as experienced by health care professionals.

Welte objected to the instruction requiring proof of the common experience *as experienced by health care professionals.* We find this instruction effectively denied Welte of the benefit of the res ipsa inference of negligence and required her to establish the common experience of the health care professional. *See Sammons*, 353 N.W.2d at 384–85.

Because of the faulty instruction, the general negligence claim against Mercy must be retried. On retrial the jury must be instructed that proof of the second foundational element rests on common experience. If expert medical evidence is offered and received upon this element, the uniform instruction may be tailored to provide that proof of the second foundation of fact rests on common experience or the common experience of the health care provider.

### V. *Other Issues.*

Welte argues communications between the court and the jury following submission of the case were improper. Because this issue is not likely to recur on retrial we decline to address it.

■ Welte challenged the court's failure to instruct the jury as to concurrent negligence. This issue may reoccur on retrial and therefore we address it. Where the evidence shows more than one cause contributing to injury or damage, the following sentence should be added to the instruction on proximate cause: "There can be more than one proximate cause of an injury or damage." *See* comment to Iowa Civil Jury Instruction 700.3. We believe it would be appropriate to submit such an instruction where the claim alleges more than one party was negligent.

■ The court was requested by Welte to instruct the jury as to admissions made by Dr. Bello in the pleadings. Ordinarily, the trial court should include in its instructions the admissions in the pleadings of a party. Although identical testimony may be offered at trial, the jury is not required to believe the testimony of a witness. *Burger v. Omaha & Council Bluffs St. Ry. Co.*, 139 Iowa 645, 117 N.W. 35 (1908); *see also* Iowa Civil Jury Instruction 100.9.

We have reviewed the issues raised on appeal as they relate to Welte's informed consent claim against Dr. Bello and the specific negligence claim against Mercy and find no reversible error. We reverse and remand the cases for trial on the general negligence claim.

REVERSED AND REMANDED.

All Justices concur except SNELL, J., who dissents and is joined by HARRIS, J.

McGIVERIN, C.J., concurs in part and dissents in part.

SNELL, Justice (dissenting).

I respectfully dissent.

The majority has ignored our law and has effectively expanded the application of the res ipsa loquitur doctrine well beyond its recognized purpose. Ever closer does the goal appear that any unexpected bad result from surgery must have been due to a surgeon's negligence. The "thing speaking for itself" has taken on a life of its own multiplying into the field of medicine with the self assurance of a crusader.

Because the inference of negligence is without specific proof, we have said the doctrine of res ipsa loquitur should be used sparingly. *Mogensen v. Hicks*, 253 Iowa 139, 143, 110 N.W.2d 563, 565 (1961). This is especially true in medical malpractice cases. *See Lagerpusch v. Lindley*, 253 Iowa 1033, 1038, 115 N.W.2d 207, 210 (1962) (res ipsa "should be used very rarely in medical cases" and "in many medical cases, the doctrine of res ipsa loquitur has been rejected"); *Shinofield v. Curtis*, 245 Iowa 1352, 1361, 66 N.W.2d 465, 471 (1954).

The doctrine is most often applied to medical injuries occurring when a surgeon either leaves an object in a patient's body or damages a portion of the body wholly unrelated to the surgery. See generally, 1 D. Louisell and H. Williams, *Medical Malpractice* § 14.02, at 14–37 to 14–38 (1990). Neither is the case here.

We have held that the mere fact that an occurrence is rare does not alone warrant an application of res ipsa loquitur. *Reilly v. Straub*, 282 N.W.2d 688, 695 (Iowa 1979); *Cronin v. Hagen*, 221 N.W.2d 748, 753 (Iowa 1974); *Perin v. Hayne*, 210 N.W.2d 609, 613 (Iowa 1973). Further, the common experience exception to the expert testimony rule applies only where the injury suffered is an obvious violation of accepted medical standards. *See, e.g., Oswald v. LeGrand*, 453 N.W.2d 634, 639–401 (Iowa 1990); *Daiker v. Martin*, 250 Iowa 75, 91 N.W.2d 747, 752 (1958). In *Perin*, we decided that experts will be required to establish res ipsa's second foundational fact—that the injury would not have occurred in the ordinary course of events if reasonable care had been used—where the injury sustained lies outside the common knowledge of laypersons.

The common knowledge of laypersons hardly includes an understanding of the nature of sodium pentothal or what would happen if the sedative escaped from a vein to surrounding tissue. Nor is it commonly known how a needle is inserted into a vein, or how far it should be thrust. The majority's analysis is that the common knowledge exception is satisfied because people know that intravenous injections are often done. The misapprehension here is that knowledge of the frequency of an operative procedure equals knowledge that an unfavorable medical result must have been due to negligence. These two spheres of knowledge are not correlatives.

With the standard applied by the majority, will every appendicitis operation involve an inference of negligence whenever a perfect result is not achieved? How soon will the res ipsa loquitur doctrine be applied to heart surgery cases? There are certainly many cases where a superb surgeon has performed the best operation possible and, nevertheless, experienced a tragic result. The fact that his skills were not enough to save the patient should not translate to an inference of negligence. It is for the jury to decide whether the evidence shows a negligent surgeon or not. But the surgeon hasn't promised perfection to the patient and should not have it hung like an albatross about his neck, as the inference of negligence truly does, in the courtroom.

In *Cronin*, 221 N.W.2d at 753, we said:

There is no basis in the record for contending the occurrence would not have happened in the ordinary course of things if reasonable care had been used. Indeed, it seems this occurrence was an inherent risk of the operation and, though rare, could happen even with the exercising of due care.

The evidence is insufficient to generate a jury question as to the existence of this foundational fact. This essential of the doctrine being absent the doctrine does not apply.

I believe that expert testimony was required in the instant case as in *Cronin.* When none was proffered by the plaintiff, Dr. Bello was entitled to summary judgment on this issue.

The majority's claim that Dr. Bello supplied the expert testimony to skewer himself is unrealistically technical. His statement in response to an interrogatory was one of scientific fact that sodium pentothal has caustic and burning effects. Dr. Maxwell's was similar. Both fell far short of supplying the expert testimony that plaintiff's injury would not occur absent negligence.

The majority's reversal of the jury's absolution of Mercy Hospital again elevates "common experience" to lofty heights. Plaintiff Welte did receive the benefit of the res ipsa loquitur doctrine in the case against Mercy Hospital. Even so, the majority decides that the jury must infer negligence without judging the resulting injury against the standard of care recognized by those most knowledgeable in the field—the health care professionals. Thus, to the majority, the jurors' "common knowledge" of negligence, even if totally erroneous, is adequate to find liability since no expert testimony is required. This construction misuses the res ipsa loquitur principle.

The trial court carefully and correctly applied the doctrine and should be affirmed.

HARRIS, J., joins this dissent.

McGIVERIN, Chief Justice (concurring in part and dissenting in part).

I concur in division IV of the majority opinion and would reverse and remand for a new trial as to defendant Mercy Hospital.

I dissent from division III of the majority opinion and would affirm as to defendant Bello for the reasons stated in Justice Snell's dissent concerning Bello.

Thus, I would affirm in part and reverse in part.