Daniel Mark **KENNIS**, Appellant,

v.

**MERCY HOSPITAL MEDICAL CENTER, Surgical Affiliates Professional Corporation, Foreman and Dick Professional Corporation, James Caterine, and Hugh C. Dick, Appellees.**

No. 91–345.

Supreme Court of Iowa.

Oct. 21, 1992.

Rehearing Denied Nov. 25, 1992.

Daniel Mark Kennis, pro se.

Glenn Goodwin, Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellee Mercy Hosp. Medical Center, and for amicus curiae Iowa Medical Soc.

Chester Woodburn, Hansen, McClintock & Riley, Des Moines, for appellees Foreman & Dick, P.C. and Hugh C. Dick.

Michael H. Figenshaw and Robert A. Sims, Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee James Caterine and Surgical Affiliates, P.C.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, SNELL, and ANDREASEN, JJ.

SCHULTZ, Justice.

The issue in this medical malpractice action is whether summary judgment for defendants is proper where plaintiff has no expert witness to establish defendants' negligence. The district court granted defendants' motion for summary judgment. The court of appeals affirmed in part and reversed in part. We agree with the ruling of the district court and vacate the court of appeals' decision.

Daniel Mark Kennis (plaintiff) commenced this action against Mercy Hospital Medical Center (Mercy), Surgical Affiliates Professional Corporation (Surgical Affiliates), James Caterine, Foreman and Dick Professional Corporation (Foreman and Dick) and Hugh C. Dick. Caterine, a surgeon with Surgical Affiliates denies plaintiff's allegations that he was an agent of Surgical Affiliates at the time in question. Dick, a urologist, is an employee of Foreman and Dick.

Plaintiff received an intestinal bypass operation on May 12, 1971, performed by Edward Drew, a surgeon at Mercy in Des Moines. This procedure requires the patient to be catheterized during the operation. A blockage in plaintiff's urethra was encountered during the operation and Drew was only able to insert the catheter through the use of a filiform dilator.

Plaintiff was dissatisfied with the bypass because of chronic abdominal pain and diarrhea. His wife prevailed upon Mercy to provide him a reversal of the bypass at no expense. Mercy agreed and secured the services of Caterine at no charge to plaintiff. Caterine performed the surgery on December 16, 1987, after plaintiff signed a consent form. Plaintiff was informed that a catheter would be inserted during the operation.

During the course of the surgical procedure, a complication developed. After plaintiff was anesthetized, Caterine was unable to insert a catheter through the urethra and called in Dick to assist. Dick performed a suprapubic cystostomy, a procedure that involves making an incision into the bladder to insert a catheter.

The suprapubic cystostomy tube became dislodged after surgery and on December 19, Dick performed a corrective operation on plaintiff to replace the tube. Plaintiff was discharged from Mercy on December 26. Four days later, an infection of the suprapubic incision required plaintiff to return to Mercy and undergo another corrective operation. This operation was performed by another surgeon not a party to this action.

On December 5, 1989, plaintiff filed a petition bringing a malpractice action against defendants. The petition, as amended, included claims of negligence, a claim of lack of informed consent, and battery against all defendants. These claims only involved matters arising from the cystostomy procedures and did not involve the intestinal bypass surgery. Plaintiff alleges the procedure caused him to gain weight, suffer seizures, lose his eyesight, become impotent, and develop a thyroid condition, a heart condition, sleep apnea, diabetes, and constipation.

On June 15, 1990, plaintiff filed a late certification of an expert witness [1], surgeon

---

1. Iowa Code section 668.11(1)(a) (1989) requires the disclosure by the plaintiff of an expert witness in liability cases involving licensed professionals within one hundred eighty days of defendant's answer unless the court for good cause extends the time of disclosure.

Drew, and requested an extension to certify additional expert witnesses. The district court allowed the certification of Drew but denied the request for an extension. Following Drew's deposition, in which he stated that he could not say whether or not there was any negligence in plaintiff's treatment, defendants filed a motion for summary judgment. Defendants argued that plaintiff could not establish his claims without the testimony of an expert witness and the time period for plaintiff to certify an expert had expired. The district court granted defendants' motion for summary judgment and plaintiff appealed.

Plaintiff urged the trial court erred (1) in requiring expert witness testimony to establish defendants' negligence when the issue of negligence is within the comprehension of a lay person; (2) in requiring expert testimony to generate a jury question under the doctrine of *res ipsa loquitur;* and (3) in overruling his claim that any law requiring expert testimony in a medical malpractice case is unconstitutional.

The court of appeals reversed the district court on the issue of Caterine's negligence in not discovering the blocked urethra before surgery and on the issue of whether Caterine and Dick obtained informed consent for the cystostomy procedure. We granted defendants' request for further review. Plaintiff did not seek further review, but did resist defendants' application.

Summary judgment is proper "when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law." *Brown v. Monticello State Bank,* 360 N.W.2d 81, 83–84 (Iowa 1984); Iowa R.Civ.P. 237(c). In reviewing a summary judgment in a medical malpractice action, the "task is to determine whether any evidence in the summary judgment record enables plaintiffs to establish the applicable standards of care, and defendant's breach of those standards." *Cox v. Jones,* 470 N.W.2d 23, 26 (Iowa 1990). In a summary judgment case such as this, the "issue becomes not whether there was negligence in the actions of the defendant but whether there was evidence upon which liability could be found." *Id.*

I. *Battery.* In his petition, plaintiff alleges battery on the part of defendants. On appeal and in resistance to further review, plaintiff urges no consent was given to the cystostomy procedure; therefore, a battery was committed upon him. He maintains his consent to the surgery to reverse his bypass did not include consent to the cystostomy.

We have distinguished between the claims of battery and those based on negligence. *Perin v. Hayne,* 210 N.W.2d 609, 618 (Iowa 1973). We quoted from a statement in *Cobbs v. Grant,* 104 Cal.Rptr. 505, 502 P.2d 1 (1972) as follows:

> The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present. However, when the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in negligence.

*Id.* at 511, 502 P.2d at 7–8.

Plaintiff was informed that catheterization was necessary. In his consent form, plaintiff agreed to the performance of operations and procedures different from those contemplated that his doctor considered necessary or advisable in the course of the operation. In order to sustain a battery claim, we believe that it was necessary for plaintiff to obtain expert testimony to show that the cystostomy was a totally different type of treatment from that to which he consented rather than an inherent complication that may occur when catheterization is required. Consequently, we agree that summary judgment should have been granted on this claim. We will discuss the

matter of informed consent in connection with the negligence claim.

■ II. *Negligence.* We first discuss certain principles of negligence in a medical malpractice case. In order to establish a prima facie case of medical malpractice, plaintiff must show evidence which establishes the applicable standard of care, demonstrate this standard has been violated, and develop a causal relationship between the violation and the alleged harm. *Daboll v. Hoden,* 222 N.W.2d 727, 734 (Iowa 1974).

■ This court has recognized three means of establishing specific negligence of a physician:

> One is through expert testimony, the second through evidence showing the physician's lack of care so obvious as to be within comprehension of a layman, and the third, (actually an extension of the second) through evidence that the physician injured a part of the body not involved in the treatment. The first means is the rule and the others are exceptions.

*Perin,* 210 N.W.2d at 613. Generally, when the ordinary care of a physician is an issue, only experts can testify and establish the standard of care and the skill required. *Welte v. Bello,* 482 N.W.2d 437, 439 (Iowa 1992); *Perin,* 210 N.W.2d at 613.

In his petition and on appeal, plaintiff has made various allegations of conduct which he believes violated the applicable standards of care of a physician to his patient. We shall discuss them in turn.

■ Plaintiff alleged that the initial installation of the cystostomy tube was improperly placed. He also generally alleged defendants provided improper care and treatment. We agree with the district court's and the court of appeals' conclusion that these allegations of negligence clearly require expert testimony to establish an applicable standard of care and a violation of that standard. Whether or not the tube was properly placed is a matter not within the comprehension of an average layperson. The same is true as to his allegations that he generally received improper care and treatment.

■ Plaintiff also alleged negligence of defendants due to Caterine's failure to consult his past medical record. He urged that if his fifteen-year-old hospital record had been reviewed, Caterine would have discovered the problem encountered in his earlier surgery involving the insertion of a catheter and would have been able to properly inform plaintiff of the possible catheterization problem and the need to perform the cystostomy placement. If he had received this information, plaintiff insists that he would not have consented to the surgery.

Whether or not physicians have a duty to review a fifteen-year-old medical record on a patient to ascertain potential complications is not a matter that is so obvious as to be within the comprehension of a layperson. A person untrained in medicine and surgery is certainly not equipped with the necessary information to determine the amount of investigation that is required by a physician prior to undertaking surgery. Furthermore, the prior surgery record indicated that the catheterization was completed, although with some difficulty. It would require expert testimony to determine if that information would have caused a physician to believe there was a reasonable probability that the cystostomy procedure might be required. Consequently, expert testimony would be required to establish a causal connection between violation of the standard of care, if there was any, and the alleged harm.

■ Plaintiff also claims that defendants violated their duty of care to him by failing to obtain his consent before they proceeded with the cystostomy. He maintains that it is unnecessary to obtain expert testimony in this regard because it is a lack of care so obvious as to be within the comprehension of a layperson. He also argues that this procedure was an injury to a part of the body not involved in the treatment. Finally, he claims that when defendants learned of the problem with the catheter they should have discontinued the surgery and obtained his consent when he awoke from the anesthesia.

In *Pauscher v. Iowa Methodist Medical Center*, 408 N.W.2d 355 (Iowa 1987), we examined the issue of informed consent in a medical malpractice action. We adopted the "patient rule" for determining informed consent. Under the patient rule "the physician's duty to disclose is measured by the patient's need to have access to all information material to making a truly informed and intelligent decision concerning the proposed medical procedure." *Id.* at 359. In order to show lack of informed consent, the patient must establish the following:

(1) The existence of a material risk unknown to the patient;

(2) A failure to disclose that risk on the part of the physician;

(3) Disclosure of the risk would have led a reasonable patient in the plaintiff's position to reject the medical procedure or choose a different course of treatment;

(4) Injury.

*Id.* at 360. We stated that the patient will generally be required to present expert testimony "relating to the nature of the risk and the likelihood of its occurrence, in order for the jury to determine, from the standpoint of a reasonable patient, whether the risk is a material one." *Id.*

Recently, we held that a claim of lack of informed consent is an issue beyond the common knowledge of laypersons and requires expert evidence. *Cox*, 470 N.W.2d at 27. In *Cox*, the plaintiff who had undergone a cataract removal operation complained because she was not informed of the risk of retinal detachment prior to the surgery. We determined that the knowledge and likelihood of this condition certainly was not a matter within the common knowledge of laypersons. *Id.* at 26.

In the present case, plaintiff signed a consent form which read:

I consent to the performance of the operations and procedures in addition to or different from those now contemplated, whether or not arising from presently unforeseen conditions, which the above named doctor or his associates may consider necessary or advisable in the course of the operation deemed to be in my best interest.

There is no doubt that defendants had plaintiff's consent to perform the reverse intestinal bypass. In addition, it appears that plaintiff was informed that this procedure required the insertion of a catheter. He was not informed of the possibility that a suprapubic cystostomy might be required. We do not believe that the likelihood of occurrence, and materiality of a cystostomy are factors within the common experiences of laypersons.

We also reject the claim that the cystostomy caused an injury to a part of the body not in treatment. Plaintiff knew that it was necessary to have a catheter inserted into his bladder. The cystostomy procedure was in the same body area.

Finally, we do not agree that plaintiff can establish that either Caterine or Dick violated a standard of care when they did not stop the operation, wake the patient, and when it was convenient, obtain his consent to do the cystostomy. The patient had consented to procedures arising from unforeseen conditions. Whether or not a procedure should go forward involves questions of comparative risk which are not so obvious as to be within the comprehension of a layperson. Expert testimony is required under these circumstances.

III. *Res Ipsa Loquitur.* Plaintiff argues that the testimony of an expert witness is not required when res ipsa loquitur is pleaded. With this contention in mind, we examine the appropriate principles of law.

We recently examined in detail the doctrine of res ipsa loquitur as it applies to medical malpractice cases in *Welte*, 482 N.W.2d at 439–42. Res ipsa loquitur is a rule of evidence which, when applied, permits, but does not compel, an inference that a defendant was negligent. The happening of an injury permits an inference of negligence where plaintiff produces substantial evidence that (1) the injury is caused by an agency or instrumentality under the exclusive control and management of the defendant, and (2) the occur-

rence is such as in the ordinary course of things would not have happened if reasonable care had been used. *Id.* at 440. This latter requirement may be proved by the common experience of laypersons or of experts. If expert testimony is required to establish the foundational facts and expert testimony is unavailable, then summary judgment is appropriate. *Id.*

In *Welte,* we reviewed cases in which we held that expert testimony was not required to show that the occurrence would not have happened if reasonable care had been used. *Id.* at 440–41. Most of those cases involved injuries out of the field of treatment and to healthy parts of the body. *Id.* In contrast, expert testimony was required to establish matters involving highly technical questions of causation. *Tappe v. Iowa Methodist Medical Ctr.,* 477 N.W.2d 396 (Iowa 1991) (heart bypass resulting in brain damage); *Cox,* 470 N.W.2d at 23 (expert testimony required to determine appropriate standard of follow-up care for cataract extraction); *Donovan v. State,* 445 N.W.2d 763 (Iowa 1989) (replacement of heart valve resulting in staph infection lies beyond understanding of laypersons and requires introduction of expert testimony); *Forsmark v. State,* 349 N.W.2d 763 (Iowa 1984) (back surgery resulting in paralysis requires expert testimony).

In the present case, a tube attached to the bladder became displaced and leaked urine into the body cavity. The question of what caused this displacement lies beyond the understanding of a layperson. Consequently, we must reject plaintiff's claim that expert testimony is not required under his res ipsa loquitur claim.

■ IV. *Constitutionality of section 668.11.* Plaintiff argues that Iowa Code section 668.11 [2] operates to deny his consti-

tutional rights to equal protection and due process. See U.S. Const. amend. XIV, § 1. Specifically, plaintiff argues that the statute discriminates against victims of malpractice who do not have money. Plaintiff reasons that plaintiffs who lack money are disadvantaged because they cannot afford to hire experts, cannot afford to hire attorneys who require payment for experts in advance, and because experts refuse to work with pro se litigants.

In *Thomas v. Fellows,* 456 N.W.2d 170 (Iowa 1990), we examined the constitutionality of section 668.11. In addressing an equal protection claim, we stated that "section 668.11 does not abridge plaintiffs' right of access to the courts; it merely establishes reasonable procedural requirements in the exercise of that right." *Thomas,* 456 N.W.2d at 172.

In *Thomas,* we also examined the question of whether section 668.11 violates due process. We found no merit in plaintiffs' due process argument because the dismissal of the case was merely the result of plaintiffs' failure to abide by the clear requirements of the statute. We noted that "plaintiffs were not denied a hearing; their case was not dismissed until after the hearing on the motion for summary judgment." *Thomas,* 456 N.W.2d at 173. Here, as in *Thomas,* there was a hearing on the summary judgment motion where plaintiff had an opportunity to be heard. We conclude that *Thomas* is dispositive on the constitutional questions plaintiff raises here.

In conclusion, the nature of this malpractice action requires expert testimony to establish defendants' negligence. In the absence of expert testimony, no genuine issue of fact is present and summary judgment for defendants is proper. Accordingly, we

---

**2.** Iowa Code section 668.11 (1989) provides in pertinent part:

1. A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name and the purpose for calling the expert within the following period.

a. The plaintiff within one hundred and eighty days of the defendant's answer unless

the court for good cause not ex parte extends the time of disclosure.

b. The defendant within ninety days of the plaintiff's certification.

2. If a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown.

vacate the court of appeals' decision and reinstate the decision of the trial court granting defendants' summary judgment motion.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.