Juanita BRAY and Donald
Bray, Appellants,

v.

Donal D. HILL, D.O., Winn H. Gregory,
M.D., and Medical Arts Associates,
Appellees.

No. 93–0401.

Court of Appeals of Iowa.

March 24, 1994.

---

John T. Nolan, Iowa City, for appellants.

Randall C. Stravers and Marion H. Pothoven of Pothoven, Blomgren & Stravers, Oskaloosa, for appellees.

Heard by SCHLEGEL, P.J., SACKETT, J., and CRITELLI, Senior Judge *, but decided by DONIELSON, C.J., and HAYDEN, SACKETT, HABHAB, CADY, and HUITINK, JJ.

HABHAB, Judge.

Plaintiffs appeal a judgment entered upon a jury verdict for defendants in a medical malpractice action. Plaintiffs contend the district court erred in: (1) excluding evidence that defendant Gregory failed to disclose his probationary status with the Iowa Board of Medical Examiners as it relates to informed consent; (2) excluding testimony by plaintiff Juanita Bray's daughter, a nurse, of her observations concerning defendant's conformity with standard medical practices; and (3) admitting rebuttal testimony concerning Gregory's caring attitude toward his patients.

Plaintiff Juanita Bray was diagnosed by Dr. Donal Hill as having cervical cancer. Dr. Hill was employed by Medical Arts Associates. Dr. Hill advised Juanita to have a total hysterectomy, to be performed by Dr. Winn Gregory and assisted by Dr. Hill. The surgery was performed on October 24, 1989. During the surgery Juanita's left ureter was tied by sutures, which stopped the flow of urine from her left kidney to the bladder. This condition was corrected. Dr. Gregory apparently did not conduct a presurgical conference.

On September 9, 1991, Juanita and her husband, Donald Bray, filed a medical malpractice action against Dr. Hill, Dr. Gregory, Medical Arts Associates, and Jefferson County Hospital. Plaintiffs raised several specifications of negligence, including lack of informed consent. The Brays alleged, in part, that Gregory ligated Juanita's ureter, blocking the flow of urine from her left kidney to her bladder. Plaintiffs alleged that, as a result, Juanita suffered from increased susceptibility to kidney infection and permanent increased urgency. Plaintiffs later voluntarily dismissed their action against Jefferson County Hospital, and the hospital is not a party to this appeal.

Prior to trial, plaintiffs sought an evidentiary ruling on the admissibility of evidence that Dr. Gregory had failed to disclose his probationary status with the Iowa Board of Medical Examiners at the time of the surgery. Plaintiffs argued this evidence was relevant to the issue of informed consent, in that Juanita would not have consented to having surgery performed by Dr. Gregory if she had known he was on probation at the time.

In 1986 Dr. Gregory had been placed on probation for three years and fined $1,000 for negligence in exercising due care in the delegation of medical services. The complaint was due to an incident in which a physician's assistant, who was employed by Dr. Gregory, had provided services beyond his qualifications. The probation was terminated on January 11, 1990, and Dr. Gregory was restored to full privileges before the board.

The district court ruled the evidence was not admissible. The court found the evidence of Dr. Gregory's probationary status

* Senior judge from the 5th Judicial District serving on this court by order of the Iowa Supreme Court.

would not aid the jury in its work because the physician's assistant in question was not involved in this case. The court also found the evidence was not directly related to the medical procedures involved here. Finally, the court concluded the admission of the evidence would be unduly prejudicial.

The case then proceeded to trial before a jury. The jury returned a special verdict finding Dr. Hill and Dr. Gregory had not been negligent in the performance of the surgical procedure and that there had not been a failure to obtain informed consent for the hysterectomy. Based on the jury verdict, the district court dismissed the case. Plaintiffs appeal. We affirm.

I.

Plaintiffs first contend the district court erred in refusing to admit evidence of Dr. Gregory's probationary status before the Iowa Board of Medical Examiners. Plaintiffs argue that a doctor's qualifications are an important consideration on the issue of informed consent. They claim the information would be important to Juanita in her choice of surgeons. They also claim Dr. Gregory's probationary status implied a clear risk of harm to Juanita because it showed Dr. Gregory's history of noncompliance with recognized standards of conduct.

■ The doctrine of informed consent arises out of the unquestioned principle that absent extenuating circumstances a patient has the right to exercise control over his or her body by making an informed decision concerning whether to submit to a particular medical procedure. *Pauscher v. Iowa Methodist Medical Ctr.*, 408 N.W.2d 355, 358 (Iowa 1987). Thus, a doctor recommending a particular procedure generally has, among other obligations, the duty to disclose to the patient all material risks involved in the procedure. *Id.* The physician's duty to disclose is measured by the patient's need to have access to all information material to making a truly informed and intelligent decision concerning the proposed medical procedure. *Doe v. Johnston*, 476 N.W.2d 28, 31 (Iowa 1991).

■ To establish negligence for failure to obtain informed consent, a plaintiff must prove four things:

1. The existence of a material risk unknown to the patient;
2. A failure to disclose that risk on the part of the physician;
3. Disclosure of the risk would have led a reasonable patient in plaintiff's position to reject the medical procedure or choose a different course of treatment; and
4. Injury.

*Kennis v. Mercy Hosp. Medical Ctr.*, 491 N.W.2d 161, 166 (Iowa 1992).

Clearly, the risk involved in every informed consent action is not so significant as to generate a jury question. *Pauscher*, 408 N.W.2d at 362. It is generally acknowledged that not all risks need be disclosed, only the material risks. *Id.* (citations omitted). In *Pauscher*, the Iowa Supreme Court adopted the patient rule in all cases requiring a determination as to whether informed consent had been given. *Id.* at 359. The question of whether a risk is material is an objective one, based on what a reasonable patient would believe is material. *Id.* at 360. The Iowa Supreme Court has stated:

Under the [patient] rule, the patient's right to make an informed decision about submitting to a particular medical procedure places a duty on the doctor to disclose all material risks involved in the procedure. (Citations omitted). That duty is shaped, not by what the medical community would deem material, but by the patient's need for information sufficient to make a truly informed and intelligent decision. *Pauscher*, 408 N.W.2d at 359.

*Doe*, 476 N.W.2d at 31.

The question before us is whether the district court abused its discretion in ruling that the evidence of Dr. Gregory's probationary status was not admissible because the danger of unfair prejudice from its admission substantially outweighed its probative value. Such a balancing decision under Iowa Rule of Evidence 403 is a matter for the district court's discretion. *Harris v. Jones*, 471 N.W.2d 818, 821 (Iowa 1991).

We conclude the district court did not abuse its discretion. A physician has a duty to disclose only those material risks involved in the medical procedure. Dr. Gregory's probationary status was due to the activity of a physician's assistant in his employ. The probation did not relate to Dr. Gregory's qualifications as a surgeon nor did it bear on any material risks involved in the medical procedure. We find no abuse of discretion in the district court's refusal to admit this evidence.

## II.

Next, plaintiffs contend the district court abused its discretion in refusing to allow Rita Bennett to give her opinion that other physicians uniformly hold a presurgical conference. Bennett is a nurse and Juanita's daughter. Plaintiffs sought to have Bennett testify on this matter based on her experience as a nurse.[1]

Determinations of the admissibility of opinion evidence rest largely in the district court's discretion, and we do not interfere with such decisions unless they exhibit a manifest abuse of discretion to the prejudice of the complaining party. *Renze Hybrids, Inc. v. Shell Oil Co.,* 418 N.W.2d 634, 639 (Iowa 1988).

Doctors are held to such reasonable care and skill as is exercised by the ordinary physician of good standing under like circumstances. *Bartholomew v. Butts,* 232 Iowa 776, 779, 5 N.W.2d 7, 9 (1942); *Clites v. State,* 322 N.W.2d 917, 919 (Iowa App.1982). Generally, when the ordinary care of a physician is an issue in a medical malpractice action, only experts in the profession can testify and establish the standard of care and skill required. *Welte v. Bello,* 482 N.W.2d 437, 439 (Iowa 1992); *Kennis,* 491 N.W.2d at 165.

If the standard of care of a physician, surgeon, or dentist is at issue, Iowa law permits only testimony upon appropriate standard of care by an expert who has qualifications, related directly to the medical problem at issue and type of treatment administered. Iowa Code § 147.139; *Welte,* 482 N.W.2d at 439. Testimony on what another physician would do is not sufficient to establish a standard of care. *DeBurkarte v. Louvar,* 393 N.W.2d 131, 133 (Iowa 1986).

Here, plaintiffs' daughter, a nurse, was asked to give an expert opinion insofar as to her observations as to the practice of surgeons and physicians with reference to preoperative conferences. With the authority previously cited, we conclude the district court did not abuse its discretion in sustaining defendant's objection. *See Rudy v. Meshorer,* 146 Ariz. 467, 470, 706 P.2d 1234, 1237 (Ariz.App.1985) (testimony of registered nurse cannot be used to establish the standard of care a doctor must meet).

## III.

Finally, plaintiffs contend the district court should not have allowed Laura Hewitt, a nurse employed by Dr. Gregory, to give rebuttal testimony that Dr. Gregory was a caring surgeon. The evidence was admitted after Juanita testified that Dr. Gregory ignored her and made her feel abandoned. The determination of the relevance of evidence rests within the sound discretion of the trial court and will be reversed only upon a showing that such discretion has been abused. *Harris,* 471 N.W.2d at 821.

We find no abuse of discretion in the district court's admission of this evidence. The plaintiffs raised the issue by testimony that Dr. Gregory was uncaring towards his patients. The district court did not abuse its discretion in allowing evidence to rebut this testimony. We note that Hewitt testified about Dr. Gregory's attitude towards his pa-

---

1. The exchange regarding Rita Bennett's knowledge on whether other physicians uniformly hold a presurgical conference was the following:

Q. In the course of that experience, and together with your training as a nurse, had you had a chance to observe the practice of surgeons and physicians with reference to preoperative conferences? A. Yes.

Q. And would you tell the jury what your observation was?

MR. POTHOVEN: Her observations as to what was done in other hospitals is not relevant to this case, no diagnosis to give or opinion.

THE COURT: Sustained.

tients; Hewitt did not testify about a physician's standard of care to patients.

**AFFIRMED.**

All Judges concur, except DONIELSON, C.J., and SACKETT, J., who dissent.

DONIELSON, Chief Judge (dissenting).

I respectfully dissent. I would reverse the district court's refusal to admit evidence of Dr. Gregory's probationary status. This information is a necessary consideration for a patient contemplating major surgery in order to make an informed and intelligent decision. The fact of a three-year probation and a $1,000 fine for permitting an assistant to perform unauthorized medical service goes to the heart of an informed consent. The evidence should have been admitted for the jury to consider.

SACKETT, Judge (dissenting).

I, too, dissent. The plaintiff sought to admit testimony of Rita Bray Bennett that physicians uniformly hold presurgical conferences with patients.

Rita Bray Bennett is a licensed registered nurse. She graduated from the University of Iowa in 1986, and worked until 1989 at the University of Iowa Hospital and Clinics. She worked two years in the general pediatric unit with surgical, neurological, urology and hematology patients. In her last year at the University of Iowa, she worked in a unit specializing in hematology, oncology and renal problems. Rita went to Chicago in 1989 and started as a registry nurse with a new agency and worked as needed as a registered nurse in a variety of hospitals, including Northwestern Memorial, Rush–Presbyterian Medical Center and Ravenswood and Swedish Covenant community hospitals on a variety of floors. She currently is employed at the University of Chicago Medical Center in the neonatal intensive care unit.

Rita was asked what observations she had made during her hospital experiences. Her proffered testimony was relevant to the is-sues in this case and she was clearly competent to testify as to her observations.