# In the Iowa Supreme Court

No. 24–1972

Submitted January 21, 2026—Filed May 29, 2026

**Margaret Lofgren,** both individually and as administrator of the **Estate of Louden P. Lofgren,**

Appellant,

vs.

**Thomas Simpson, M.D.** and **ENT Medical Services, P.C.,**

Appellees.

Appeal from the Iowa District Court for Johnson County, Andrew Chappell, judge.

The plaintiffs appeal the district court ruling dismissing this medical malpractice action with prejudice under Iowa Code section 147.140. **Affirmed in Part, Reversed in Part, and Case Remanded.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., and McDonald and May, JJ., joined. Mansfield, J., filed an opinion concurring in part and dissenting in part. McDermott, J., filed an opinion concurring in part and dissenting in part, in which Oxley, J., joined.

Brian Patrick Galligan (argued) of Galligan Law, P.C., Clive, for appellant.

Graham R. Carl (argued), Jennifer Rinden, and Vincent S. Geis of Shuttleworth & Ingersoll, Cedar Rapids, for appellees.

Erik P. Bergeland and Jeffrey R. Kappelman of Finley Law Firm, P.C., Des Moines, for amicus curiae American Hospital Association.

**Waterman, Justice.**

In this appeal, we must decide whether Iowa Code section 147.140 (2022) requires a plaintiff to file a certificate of merit (COM) for a claim that the defendants failed to obtain informed consent. This medical malpractice case arose from a child's death following routine surgery. The plaintiffs allege medical negligence in postoperative care and lack of informed consent because the mother was not told that a medical resident would assist in performing the surgery. After our decision in *Miller v. Catholic Health Initiatives–Iowa, Corp.*, 7 N.W.3d 367, 374–75 (Iowa 2024), the defendants moved to dismiss, arguing that the plaintiff's COM did not substantially comply with section 147.140 because it was not signed under oath or penalty of perjury. The district court agreed and dismissed the action with prejudice. The plaintiffs appealed, and we retained the case. We conclude that a COM was not required for the informed-consent claim, but that the district court correctly dismissed the other negligence claims.

### I. Background Facts and Proceedings.

L.L., age two, underwent surgery at the Iowa City Ambulatory Surgery Center to have ear tubes implanted and his adenoids removed. Margaret Lofgren, the patient's mother, consented in advance to have Dr. Thomas Simpson, an otolaryngologist (ENT), perform the surgery. Margaret claims that she was not informed that a fourth-year medical resident would assist with or perform the procedure. During the operation, the child began bleeding from his upper throat. Initially, the doctors stanched the bleeding, and they discharged the child.

Within a day, the child presented at the University of Iowa Hospitals & Clinics (UIHC). He was pale and listless and his stool was black—symptoms of

internal bleeding. UIHC doctors performed a blood transfusion, which stabilized the child's vitals. Soon after, they discharged him.

Five days later, as he was eating dinner, the child began to hemorrhage. Despite the efforts of physicians at Trinity Hospital in Muscatine and the UIHC, L.L. died from blood loss. Later investigation revealed that the fatal bleed stemmed from the site of the adenoid surgery.

Margaret Lofgren sued Dr. Simpson and his employer, ENT Medical Services, P.C., alleging that Simpson's negligent care caused L.L.'s death and that the defendants failed to secure Margaret's informed consent. She sued individually and as administrator for the estate of her child. The defendants answered the petition and denied the allegations of fault.

Shortly after initiating the lawsuit, the plaintiffs filed a COM signed by Dr. Charles Myer III, which stated that Dr. Simpson had violated the standard of care. The initial COM contained neither a jurat nor any language stating he signed it "under penalty of perjury." There was no indication that a qualified officer administered an oath.

Almost two years later—and days after our decision in *Miller*—the defendants moved to dismiss the case. They argued that Dr. Myer's COM failed to substantially comply with the requirements of Iowa Code section 147.140. Dr. Myer subsequently filed a supplemental affidavit that stated:

> I, Charles Myer, III, M.D., have personal knowledge of the following matters and believe them to be true and correct swearing under oath and penalty of perjury, and states as follows:
>
> 1. I am a physician who provided statement under affirmation in my Certificate of Merit, said notice of which was filed in this matter before the Court on April 12, 2022.
>
> 2. As I stated in the Certificate of Merit, I duly affirmed the statements in the document, which I understood to be on my oath, to provide information that was true and correct.

3. I believed when I signed the Certificate of Merit that my conscience was absolutely bound to tell the truth by my signature.

4. I understood when I signed the Certificate of Merit that it was a Court document and that the document would have legal effect.

5. At the time I signed the Certificate of Merit, I believed that by affirming my statements I was doing so under penalty of perjury with whatever consequences followed for not being truthful in the statements I made.

The plaintiffs resisted the motion to dismiss, arguing that Dr. Myer's COM substantially complied with section 147.140, that the defendants waited too long to challenge the COM, and that no COM is required for the informed-consent claim. The district court rejected those arguments, applied our holding in *Miller*, and granted the motion to dismiss the entire action with prejudice. The plaintiffs appealed, and we retained the case. We requested supplemental briefing on whether the doctrines of relation back or evidence aliunde applied.

**II. Standard of Review.**

"We review rulings on motions to dismiss under Iowa Code section 147.140(6) and the district court's statutory construction for correction of errors at law." *Miller*, 7 N.W.3d at 372 (quoting *Est. of Fahrmann v. ABCM Corp.*, 999 N.W.2d 283, 286 (Iowa 2023)). We review rulings on constitutional claims de novo. *Banwart v. Neurosurgery of N. Iowa, P.C.*, 18 N.W.3d 267, 272 (Iowa 2025).

**III. Analysis.**

This appeal presents our first opportunity to decide whether a COM is required for claims alleging a lack of informed consent. We conclude that a COM is not required for claims alleging a lack of informed consent. We reverse the district court's dismissal of that claim.

Our resolution of the remaining issues is controlled by our decisions in *Rarick v. Smidt*, ___ N.W.3d ___, ___, 2026 WL 1441855, at *5–7 (Iowa May 22, 2026), and *Banwart v. Neurosurgery of North Iowa, P.C.*, 18 N.W.3d at 275–76, 277–78. We affirm the district court's ruling that dismissed the postoperative negligence claims under section 147.140.

**A. Informed Consent.** The district court ruled that Iowa Code section 147.140's COM requirement applied to the plaintiff's informed-consent claim. The defendants argued, and the district court agreed, that informed consent is a negligence theory and that expert testimony is generally required to establish the physician's duty to disclose and the materiality of the information necessary for the patient's informed consent. The plaintiffs counter that under Iowa's "patient rule," a COM is not required. This is a question of first impression for our court. We must decide whether a COM is required for an informed-consent claim alleging the failure to disclose to the parent that a medical resident would perform part of the surgery on her two-year-old child instead of the ENT specialist to whom she consented.

For purposes of this appeal, we accept as true the allegations of the plaintiffs' amended petition: that the surgery was performed by Dr. Simpson, who was assisted by Ryan Smith—a fourth-year medical resident from the University of Iowa—and that Dr. Simpson "permitt[ed] a medical resident to perform surgery without the patient's consent." Our appellate record does not contain any written consent or disclosure document signed by Margaret Lofgren, and defendants do not argue on appeal that written disclosures refute her allegations that she did not consent to the medical resident's participation in her son's surgery. *See* Iowa Code § 147.137 ("A consent in writing to any medical or surgical procedure or course of procedures in patient care which meets the

requirements of this section shall create a presumption that informed consent was given."); *see also Acord v. Porter*, 475 P.3d 665, 679 (Kan. Ct. App. 2020) (affirming summary judgment dismissing informed-consent claims alleging nondisclosure of a medical resident's participation in surgery because "by signing the admission form and consent for surgery Acord knew or should have known that Wesley Medical Center is a teaching institution and that medical students as well as other health care providers might participate in his care and treatment as part of their training").

We begin our analysis by reviewing our precedent on informed consent. "[T]he doctrine of informed consent arises out of the unquestioned principle that absent extenuating circumstances a patient has the right to exercise control over his or her body by making an informed decision concerning whether to submit to a particular medical procedure." *Pauscher v. Iowa Methodist Med. Ctr.*, 408 N.W.2d 355, 358 (Iowa 1987). We have adopted the "patient rule" as the test determining the scope of a physician's disclosure required to obtain consent. *Id.* The patient rule replaced the "professional rule" that had largely deferred "to the medical profession" to decide what to tell patients considering surgery. *Id.* The professional rule was aptly criticized and rejected in many jurisdictions given its "inherently paternalistic and authoritarian nature." *Id.* By contrast, under the patient rule, the disclosure obligation is "shaped, not by what the medical community would deem material, but by the patient's need for information." *Doe v. Johnston*, 476 N.W.2d 28, 31 (Iowa 1991). So, "the physician's duty to disclose is measured by the patient's need to have access to all information material to making a truly informed and intelligent decision concerning the proposed medical procedure." *Pauscher*, 408 N.W.2d at 359.

The patient rule promotes patient autonomy, as we explained in *Pauscher*:

> The patient's right to make an intelligent and informed decision cannot be exercised when information material to that decision is withheld. Although most aspects of the physician–patient relationship necessarily must be dominated by the superior skill and knowledge of the physician, the decision to consent to a particular medical procedure is not a medical decision. Instead, it ordinarily is a personal and often difficult decision to be made by the patient with the physician's advice and consultation. In order to make his or her informed decision, the patient has the right to expect the information reasonably necessary to that process will be made available by the physician. To force a layperson patient to prove the professional community's standard and its violation allows the exceptions to swallow the rule—the hallmark of the professional rule as demonstrated by this case—and forces the patient to prove the withholding of material information was not medically justified. In contrast, the patient rule makes full disclosure the rule but allows for numerous exceptions which the physician, who has access to the medical knowledge involved, can assert.

*Id.* at 359–60. The focus is on the perspective of a reasonable patient as to what information is needed to decide whether to undergo surgery with a particular surgeon. *See id.* at 361–62 ("Materiality may be said to be the significance a reasonable person, in what the physician knows or should know is his [or her] patient's position, would attach to the disclosed risk . . . ." (alteration in original) (quoting *Wilkinson v. Vesey*, 295 A.2d 676, 689 (R.I. 1972))).

In *Andersen v. Khanna,* the defendant surgeon failed to disclose to his patient "his lack of training and experience in performing the particular procedure." 913 N.W.2d 526, 530 (Iowa 2018). The district court granted summary judgment dismissing the informed-consent claim after concluding that physicians under Iowa law do not "have a duty to disclose physician-specific characteristics or experience in obtaining informed consent." *Id.* at 531. We reversed and reinstated the informed-consent claim. *Id.* at 549. We determined that "[i]t is reasonable that anyone undergoing such a procedure would want to know his or her physician's experience and training, or lack thereof, before

consenting to such a procedure by that physician." *Id.* at 542. We specifically held that "a physician's experience or training with the proposed treatment can be information material to the decision of a reasonable person" whether to undergo the proposed treatment. *Id.*

Here, the plaintiffs allege that Dr. Simpson failed to disclose to Margaret Lofgren that a medical resident would perform part of the surgery on her two-year-old son. Lofgren had consented to that procedure being performed by Dr. Simpson, an ENT specialist, not a medical resident with presumably far less training and experience. Under Iowa's patient rule, the materiality of the alleged nondisclosure is determined from the perspective of a reasonable parent in Margaret's position. It is a jury question whether a reasonable parent would want to know who will operate on their child—the specialist or the resident. Under *Andersen,* a physician's lack of experience or training with the proposed procedure can be material information a reasonable patient would want before consenting, and the failure to disclose it can support an informed-consent claim. *See id.* at 542; *see also id.* at 537–38. By extension, a resident's inexperience arguably should have been disclosed to the consenting parent.

Other courts have held that an actionable informed-consent claim arises when the operation is performed "by a physician other than the one named in the consent form, so-called 'ghost surgery.' " *See Perna v. Pirozzi*, 457 A.2d 431, 438 (N.J. 1983). As the New Jersey Supreme Court explained,

> Few decisions bespeak greater trust and confidence than the decision of a patient to proceed with surgery. Implicit in that decision is a willingness of the patient to put his or her life in the hands of a known and trusted medical doctor. Sometimes circumstances will arise in which, because of an emergency, the limited capacity of the patient, or some other valid reason, the doctor cannot obtain the express consent of the patient to a surrogate surgeon. Other times, doctors who practice in a medical group may explain to a patient that any one of them may perform a medical

procedure. In that situation, the patient may accept any or all the members of the group as his surgeon. *In still other instances, the patient may consent to an operation performed by a resident under the supervision of the attending physician. The point is that a patient has the right to know who will operate and the consent form should reflect the patient's decision.* Where a competent patient consents to surgery by a specific surgeon of his choice, the patient has every right to expect that surgeon, not another, to operate.

*Id.* at 440 (emphasis added). We agree.

Against this backdrop, we turn to whether a COM is required for this informed-consent claim.

> Section 147.140(1)(*a*) establishes that a certificate of merit is required when a plaintiff pleads (1) an "action for personal injury or wrongful death," (2) "against a health care provider," (3) which is "based upon the alleged negligence in the practice of that profession or occupation or in patient care," and (4) "includes a cause of action for which expert testimony is necessary to establish a prima facie case."

*Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 540 (Iowa 2022) (quoting Iowa Code § 147.140(1)(*a*) (2018)). The first two requirements are undisputed here: (1) this is an action for wrongful death (2) against healthcare providers. We conclude that the third requirement is satisfied because under Iowa law, informed-consent claims against healthcare providers sound in negligence. *Pauscher*, 408 N.W.2d at 361. The fighting issue is whether an expert is needed to establish this informed-consent claim alleging the nondisclosure of a medical resident's participation in a child's surgery.

An expert is required in many, if not most, informed-consent cases on the issue of materiality, which turns on the nature of a risk and the likelihood of its occurrence in a particular surgery. *See Andersen*, 913 N.W.2d at 544; *Kennis v. Mercy Hosp. Med. Ctr.*, 491 N.W.2d 161, 166 (Iowa 1992) (requiring expert testimony to establish materiality of risk of cystostomy during reverse intestinal bypass surgery); *Cox v. Jones*, 470 N.W.2d 23, 26 (Iowa 1991) (requiring expert

testimony to establish materiality of risk of retinal detachment during cataract surgery); *Pauscher*, 408 N.W.2d at 360 ("Further, the patient ordinarily will be required to present expert testimony relating to the nature of the risk and the likelihood of its occurrence, in order for the jury to determine, from the standpoint of the reasonable patient, whether the risk is in fact a material one."); *see also Acord*, 475 P.3d at 679 (requiring expert testimony on an informed-consent claim because "a layperson would [not] be familiar with the risks inherent in laparoscopic ventral hernia repair surgery nor would they know how those risks might be increased—if at all—because a fifth-year surgical resident participated in the operation").

Medical experts presumably could opine on the relative safety of adenoid removal surgery and the qualifications and training of a fourth-year medical resident to perform that procedure on a two-year-old while under the supervision of an experienced ENT specialist. *See, e.g., Acord*, 475 P.3d at 679–80. But this goes to the issue of the *materiality* of risks to be disclosed for informed consent. *See id.* at 678. And materiality goes to causation; that is, whether the patient would have chosen to forgo the contemplated surgery had the risk been disclosed. *See id.*; *Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 403–04 (Iowa 2017) (relying on precedent equating the failure to disclose material fetal risks with the element of proximate cause in medical malpractice actions); *Pauscher*, 408 N.W.2d at 360 ("Disclosure of the risk would have led a reasonable patient in plaintiff's position to reject the medical procedure or choose a different course of treatment . . . ."); *see also Howard v. Univ. of Med. & Dentistry of N.J.*, 800 A.2d 73, 79 (N.J. 2002) ("A plaintiff seeking to recover under a theory of lack of informed consent also must prove causation, thereby requiring a plaintiff to prove that a reasonably prudent patient in the plaintiff's position would have

declined to undergo the treatment if informed of the risks that the defendant failed to disclose." (citation omitted)). A COM is not required for the issue of causation. *Est. of Butterfield v. Chautauqua Guest Home, Inc.*, 987 N.W.2d 834, 840 (Iowa 2023) ("We conclude Iowa Code section 147.140(1)(*a*) does not require plaintiffs to submit certificates of merit attesting to causation even though expert testimony about causation is necessary for the plaintiff to state a prima facie case.").

In *Shortell v. Cavanagh*, the Connecticut Supreme Court held that the state's certificate of merit statute did not apply to informed-consent claims. 15 A.3d 1042, 1046 (Conn. 2011). Connecticut, like Iowa, follows the patient rule and the *Shortell* court concluded "that it would frustrate the purpose of using the lay standard for informed consent cases if we were to require a plaintiff in such a case to comply with § 52-190a and attach to the complaint a good faith certificate and written opinion of a similar health care provider." *Id.* The court acknowledged that "expert testimony is used in many, but not all, informed consent cases." *Id.* at 1047. But the court correctly observed that "the expert testimony elicited in these cases does not relate to the standard of care." *Id.* Instead, as in Iowa, the expert testimony in informed-consent cases "normally relates only to the types of risks of which a patient is customarily apprised, the type of procedure, as well as the hazards, anticipated benefits and alternatives to the procedure, if any." *Id.* In other words, the expert testimony helps the jury understand the materiality of undisclosed risks that may have deterred the patient from undergoing the surgery. That is, the expert helps the jury to decide the issue of causation, not the standard of care for performing the procedure. The *Shortell* court distinguished cases from other jurisdictions that require a certificate of merit for informed-consent cases based on differences in the text of

the respective "medical malpractice tort reform statutes" or differences in the state's judicial characterizations of the informed-consent theory. *Id.* at 1048 n.4. *Shortell* supports our conclusion that Iowa Code section 147.140 does not apply to informed-consent claims.

We hold that these plaintiffs did not require a COM to proceed with their informed-consent claim. We reverse the district court's ruling on the informed-consent claim.

**B. Remaining Issues.** The plaintiffs' remaining challenges to the ruling below are foreclosed by our precedent. First, the plaintiffs argue that the district court erred by failing to determine that the defendants were barred by waiver or estoppel from challenging the COM after two years of litigation. The defendants filed their motion to dismiss before the district court's dispositive motion deadline. In *Banwart,* we established a bright-line rule allowing defendants until the district court's dispositive motion deadline to challenge a noncompliant COM. *See* 18 N.W.3d at 277–78. We affirm the district court's ruling rejecting the plaintiffs' waiver and estoppel arguments.

Second, the plaintiffs argue that the district court erred by failing to find Dr. Myer's 2022 COM substantially complied with section 147.140. They rely in part on Dr. Myer's subsequent affidavit explaining that when he executed the 2022 COM, he believed he was "on my oath" and "under penalty of perjury." In *Rarick,* we declined to consider subsequent affidavits or other evidence aliunde in determining whether the initial, timely filed COM substantially complied with the statute. ___ N.W.3d at ___, 2026 WL 1441855, at *6. The district court correctly ruled that the COM did not substantially comply with section 147.140 because it was not executed in the presence of an officer who administered an oath to Dr. Myer and lacked the statement that it was signed "under penalty of

perjury." *See id.* at \_\_\_, 2026 WL 1441855, at \*5–6. We affirm the district court's ruling that the 2022 COM failed to substantially comply with the statutory requirements.

Third, the plaintiffs argue that the substantial compliance provision in section 147.140 is unconstitutionally void for vagueness and violates due process. We affirm the district court's rejection of their constitutional challenges. *See id.* at \_\_\_, 2026 WL 1441855, at \*8 (rejecting due process challenge); *Banwart,* 18 N.W.3d at 275–76 (rejecting vagueness challenge).

Finally, the district court correctly applied *Miller* retroactively. *See Bunce v. Hansen,* \_\_\_ N.W.3d \_\_\_, \_\_\_ (Iowa 2026). We affirm that ruling as well.

**IV. Disposition.**

For those reasons, we reverse the district court ruling that dismissed the informed-consent claim under section 147.140. We affirm the district court's dismissal of the plaintiff's remaining claims. We remand the case for further proceedings on the informed-consent claim consistent with this opinion.

**Affirmed in Part, Reversed in Part, and Case Remanded.**

Christensen, C.J., and McDonald and May, JJ., join this opinion. Mansfield, J., files an opinion concurring in part and dissenting in part. McDermott, J., files an opinion concurring in part and dissenting in part, in which Oxley, J., joins.

**Mansfield, Justice (concurring in part and dissenting in part).**

I concur in part III.A of the majority opinion. I dissent as to part III.B for the reasons stated in my dissent in *Rarick v. Smidt*, ___ N.W.3d ___, ___, 2026 WL 1441855, at *12–20 (Iowa May 22, 2026) (Mansfield, J., dissenting).

#24–1972, *Estate of Lofgren v. Simpson*

**McDermott, Justice (concurring in part and dissenting in part).**

I concur in part III.A of the majority opinion. I dissent as to part III.B for the reasons stated in my dissents in *Rarick v. Smidt*, ___ N.W.3d ___, ___, 2026 WL 1441855, at *20–22 (Iowa May 22, 2026) (McDermott, J., dissenting), and *Banwart v. Neurosurgery of North Iowa, P.C.*, 18 N.W.3d 267, 278–84 (Iowa 2025) (McDermott, J., dissenting), and would hold that the certificates of merit in this case substantially comply with Iowa Code § 147.140 (2022).

Oxley, J., joins this concurrence in part and dissent in part.